COMMONWEALTH of Pennsylvania,
Appellee

v.

Edward R. DUNPHY, Appellant.

Superior Court of Pennsylvania.

Argued Jan. 11, 2011.

Filed May 6, 2011.

J. Michael Fanell, Philadelphia, for appellant.

Regina M. Oberholzer, Assistant District Attorney, Philadelphia, for Commonwealth.

BEFORE: STEVENS, P.J., FREEDBERG, and PLATT *, JJ.

OPINION BY FREEDBERG, J.:

This matter is before this Court on Edward R. Dunphy's appeal of the judgment of sentence entered on September 16, 2009, by the Philadelphia County Court of Common Pleas. Appellant raises challenges to the sufficiency of the evidence to support his third degree murder conviction and to the discretionary aspects of his sentence. For the reasons set forth herein, we affirm.

On June 7, 2008, at approximately midnight, Appellant was driving his vehicle while intoxicated, striking and killing a 20 year old pedestrian, Hannah Cintron, as she was crossing the northbound lanes of

---

* Retired Senior Judge assigned to the Superior Court.

Delaware Avenue, a six-lane divided highway with a speed limit of 35 miles per hour. Cintron suffered multiple, severe blunt impact injuries to her head, torso, and legs, sustaining a fractured hip, a fractured rib, a broken back and a ruptured aorta. Cintron was pronounced dead at the scene. As a result, Appellant was arrested and charged with murder in the third degree, 18 Pa.C.S.A. § 2502(c); involuntary manslaughter, 18 Pa.C.S.A. § 2504(a); homicide by vehicle, 75 Pa. C.S.A. § 3732; homicide by vehicle while driving under the influence, 75 Pa.C.S.A. § 3735(a); accident involving death or personal injury, 75 Pa.C.S.A. § 3742; and driving under the influence of alcohol, 75 Pa.C.S.A. § 3802(a)(1).

On July 14, 2009, Appellant proceeded to a trial before a jury. At trial, Dennis Wright, a valet employed at Roxxy nightclub in the 900 block of North Delaware Avenue, testified that, shortly after midnight on June 7, 2008, he heard the sound of a truck suddenly accelerating. He looked towards the sound, and observed Appellant driving north on Delaware Avenue at approximately 60 miles per hour. He also observed the victim, Hannah Cintron, walking across the northbound lanes of Delaware Avenue, in the lane closest to the median strip. Wright witnessed Appellant's truck slam into Cintron, causing her to fly into the air, land on the hood of his truck, fly off the truck, and then land on the street. Wright testified that, after the impact, Appellant's truck braked briefly, swerved into the middle lane, and then sped away at an even greater speed, without ever coming to a complete stop.

Joseph Stickel, who, at the time of the accident, was standing on the median strip separating Delaware Avenue, testified that he witnessed Appellant's truck come around the corner, hit Cintron, and then keep going. Stickel stated that he heard "someone slamming on their brakes, and [he] looked up and [Cintron] got hit." Notes of Testimony ("N.T.", July 15, 2009, p. 92). Based on Appellant's truck hitting Cintron, Stickel observed Cintron's body fly down the road and over the truck, and then land in the middle of the road.

After Appellant's truck hit Cintron, Robert DeGuzman, who was working a security detail at Roxxy nightclub, entered his vehicle in an attempt to locate the person who hit Cintron. When he reached Interstate 95, he came upon Appellant's truck, which matched the description of the truck that hit Cintron, and he began to follow it. DeGuzman testified that Appellant was swerving through traffic. When Appellant stopped at a house at the corner of Madison and Tilton Streets, DeGuzman ordered Appellant out of the truck and handcuffed him. DeGuzman stated that Appellant smelled strongly of alcohol, and Appellant said, "I'm sorry, I didn't mean to do it. I'm drunk." N.T., July 14, 2009, p. 122. DeGuzman observed that Appellant's truck was damaged on the driver's side, including the windshield, which was "squashed all the way down." *Id.* at 107.

Officer Michael DeRose arrived at Madison and Tilton Streets after DeGuzman had stopped Appellant. Derose testified that, when he arrested Appellant, he noticed a very strong odor of alcohol on Appellant. Further, he stated that Appellant "kept saying over and over and over again that he was sorry." *Id.* at 151.

After Appellant was arrested, Officer Robert Reppert interviewed him. Reppert testified that Appellant consented to a blood test, which was performed at 1:40 a.m. He further testified that he questioned Appellant about the incident and that, Appellant stated that he had been at McFadden's Bar and had consumed "several shots and several beers" over the course of two or three hours. *Id.* at 275–

77. Appellant further stated to Reppert that he then got into his truck and headed to his cousin's house because he "didn't think [he] could make it home." *Id.* at 277. Appellant told Reppert that, as he was driving on Delaware Avenue, he saw pedestrians crossing the street approximately 50 to 100 yards in front of him, but he accelerated to "make the next light." *Id.* at 275–78. When asked if he struck any people with his truck, Appellant stated, "Not to my knowledge, no, sir." *Id.* at 280–81. Appellant admitted to Reppert that his truck had not been damaged earlier in the evening.

Richard D. Cohn, Ph.D., testified as an expert for the Commonwealth in the areas of pharmacology and forensic toxicology. Cohn testified that Appellant's blood alcohol content was .183% at the time his blood was drawn. Cohn concluded that Appellant would have consumed a minimum of ten or eleven drinks[1] for his blood alcohol to be .183% at the time his blood was drawn. Cohn further testified that, in his opinion, Appellant was incapable of safely operating a vehicle.

Officer William Lackman of the Philadelphia Police Department's Accident Investigation Division testified as an expert on accident reconstruction on behalf of the Commonwealth. Lackman testified that Citron's body came to rest about 178 feet north of where she was originally hit by Appellant's truck, and that she was either airborne or on the hood of the truck for 135 feet. Lackman stated that the Airbag Control Module of Appellant's truck confirmed that he was traveling between 59 and 60 miles an hour when he hit Cintron, and that Cintron was traveling approximately 50 miles per hour when she flew off the hood of the truck. Lackman further stated that there were skid marks at the scene, which indicated that Appellant applied his brakes after striking Cintron, but never came to a complete stop. Lackman concluded that Appellant's truck striking Cintron caused her death.

On July 15, 2009, after the parties presented their evidence and arguments to the jury, Appellant pleaded guilty to driving under the influence of alcohol and accident involving death or personal injury. The jury subsequently found Appellant guilty of third degree murder. On September 16, 2009, the trial court sentenced Appellant to seven to fourteen years' imprisonment for third degree murder; a consecutive term of one to two years' imprisonment for accident involving death or personal injury; and sixth months' probation for driving under the influence of alcohol, to be served concurrently with his other sentences.

Appellant filed a post-sentence motion on September 28, 2009, which was denied by the trial court on September 29, 2009. Appellant filed a timely notice of appeal on October 7, 2009. The trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On December 7, 2009, Appellant filed a 1925(b) statement. The trial court filed a 1925(a) opinion on December 18, 2009.

In his brief Appellant abandoned several claims[2] raised in his 1925(b) statement,

---

1. Cohn defined "drinks" as "ten to eleven 12–ounce bottles of beer, five-ounce glasses of wine, or shots of hard liquor." N.T., July 15, 2009, p. 50.

2. The claims raised in Appellant's 1925(b) statement, but not identified in the statement of questions presented section of his brief or developed in the argument section of his brief are: (1) the trial court erred in denying Appellant's motion to suppress; (2) the guilty verdict was against the weight of the evidence; (3) Appellant's due process rights were violated by treating Appellant's counsel's concession of guilt as tantamount to a

and now raises only the following two issues:

A. Was the evidence at trial sufficient to establish the element of malice as required for proof of the offense of murder in the third degree?

B. Was the trial court's sentence of 7 to 14 years['] incarceration for third degree murder unreasonable in view of the nature of [Appellant's] offense and his lack of prior criminal record?

Brief for Appellant, p. 2.

When reviewing a challenge to the sufficiency of the evidence, we apply the following standard:

Our well-settled standard of review when evaluating a challenge to the sufficiency of the evidence mandates that we assess the evidence and all reasonable inferences drawn therefrom in the light most favorable to the verdict-winner. We must determine whether there is sufficient evidence to enable the fact finder to have found every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Evans*, 901 A.2d 528, 532–33 (Pa.Super.2006) (internal citations omitted).

Murder in the third degree is an unlawful killing with malice but without the specific intent to kill. 18 Pa.C.S.A. § 2502(c); *see Commonwealth v. Santos*, 583 Pa. 96, 876 A.2d 360, 363–64 (2005); *Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa.Super.2001). Malice is defined as:

[A] "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured ....["] [M]alice may be found where the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause serious bodily injury.

*DiStefano*, 782 A.2d at 582, *quoting Commonwealth v. Cottam*, 420 Pa.Super. 311, 616 A.2d 988, 1004 (1992). Malice may be inferred by considering the totality of the circumstances. *Commonwealth v. Thomas*, 440 Pa.Super. 564, 656 A.2d 514, 516 (1995).

Considering the totality of the circumstances, we find that the evidence was sufficient to prove that Appellant had the requisite malice to support a conviction for third degree murder. The intoxicated condition of Appellant, the excessive rate

guilty plea; and (4) Appellant received ineffective assistance of counsel. In a footnote in his brief, Appellant acknowledges that his ineffective assistance of counsel claim is premature. *See* Brief for Appellant, pp. 4–5, n.2.

of speed he was traveling on a street where pedestrians were present, Appellant's admission that although he saw pedestrians in front of him, he speeded up to make the light, the distance Cintron's body traveled upon impact, the absence of any testimony that there was a physical or climatic condition that would explain his failure to stop before or after the accident, and Appellant's flight after hitting Cintron[3] demonstrate a complete disregard of the unjustified and extremely high risk that his actions would cause death or serious bodily injury. The evidence supports a finding of malice. Thus, his third degree murder conviction must stand. *See Commonwealth v. Taylor*, 461 Pa. 557, 337 A.2d 545 (1975) (plurality) (evidence was sufficient to demonstrate malice based on the following factors: intoxicated condition of the driver; excessive rate of speed; distance the victim's body was propelled; defendant's awareness that children were present in the area; and absence of any physical or climate condition that would contribute to the accident or his failure to stop immediately after); *Scales*, 648 A.2d at 1207 (evidence was sufficient to prove malice where facts detailed "precisely the type of behavior *before, during and after* the event which must be judged to have been done with a conscious disregard of an unjustified and extremely high risk" that his actions might cause death or serious bodily injury); *Commonwealth v. Urbanski*, 426 Pa.Super. 505, 627 A.2d 789 (1993) (sufficient evidence to support finding of malice when defendant had a high blood alcohol content, there were no weather or road conditions that would explain the accident, and the defendant was or should have been aware of the danger of driving fast and recklessly after having so much to drink); *Davis*, 565 A.2d at 458 (sufficient evidence for finding of malice where the defendant fled the scene of a purse snatch, drove at an excessive rate of speed, weaved through traffic, knew that it was a congested traffic area, and fled the accident scene).

Appellant's second issue challenges the discretionary aspects of his sentence. The right to appeal the discretionary aspects of a sentence is not absolute. *Commonwealth v. Ahmad*, 961 A.2d 884, 886 (Pa.Super.2008). To determine whether an appellant has properly preserved the discretionary aspects of sentencing for appellate review, we must conduct the following four part analysis: (1) whether appellant has filed a timely notice of appeal;[4] (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence;[5] (3) whether appellant's brief has a fatal defect;[6] and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.[7] *Commonwealth v. Cook*, 941 A.2d 7, 11 (Pa.Super.2007). "The determination of whether a particular issue raises a substantial question is to be evaluated on a case-by-case basis." *Commonwealth v. Fiascki*, 886 A.2d 261, 263 (Pa.Super.2005) *quoting Commonwealth v. Bishop*, 831

---

**3.** "[A]ctions taken after [an] accident might possibly reflect upon Appellant's state of mind prior to the accident." *Commonwealth v. McHale*, 858 A.2d 1209, 1217 (Pa.Super.2004). Thus, fleeing the scene may be considered in determining if an individual acted with malice. *See Commonwealth v. Scales*, 437 Pa.Super. 14, 648 A.2d 1205 (1994); *Commonwealth v. Davis*, 388 Pa.Super. 224, 565 A.2d 458 (1989).

**4.** Pa.R.A.P. 902, 903.

**5.** Pa.R.Crim.P. 720.

**6.** Pa.R.A.P. 2119(f).

**7.** 42 Pa.C.S.A. section 9781(b).

A.2d 656, 660 (Pa.Super.2003). "Generally, however, in order to establish a substantial question, the appellant must show actions by the sentencing court inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing process." *Commonwealth v. Titus,* 816 A.2d 251, 255 (Pa.Super.2003).

Appellant satisfies the first two prongs. First, he filed a timely notice of appeal on October 7, 2009. Second, he preserved his challenge to his sentence by filing a timely post-sentence motion. *Cook,* 941 A.2d at 11.

■ To satisfy the third prong, Appellant must comply with Pennsylvania Rule of Appellate Procedure 2119(f), which provides:

> An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. The statement shall immediately precede the argument on the merits with respect to the discretionary aspects of sentence.

This Court has previously explained that:

> The concise statement must specify where the sentence falls in relation to the sentencing guidelines and what particular provision of the code it violates. Additionally, the statement must specify what fundamental norm the sentence violates and the manner in which it violates that norm. If the statement meets these requirements, we can decide whether a substantial question exists.

*Commonwealth v. Kiesel,* 854 A.2d 530, 532 (Pa.Super.2004) (internal quotations and citations omitted).

Appellant has technically complied with the mandate of Rule 2119(f). In his brief, Appellant has included a separate 2119(f) statement of reasons, in which he alleges that his sentence was improper because:

> Pennsylvania law mandates that a sentence of confinement must be consistent with the need to assure the protection of the public and the rehabilitation of the defendant in view of the gravity of the offense. 42 Pa.C.S.A. § 9721(b). It follows that a sentence to a period of confinement greater than necessary to effectuate the goals of sentencing based upon an unreasonable assessment of the gravity of an offense constitutes an abuse of discretion. In the present case, the fact that for a conviction for third degree murder for criminal conduct that usually is classified as involuntary manslaughter or homicide by vehicle and that was not intended by the defendant—a 30 year old steadily employed man who had practically no prior record—the Court imposed a sentence that was only three years less than the maximum permissible sentence of 10 to 20 years [8] seems on its fac[e] to raise a substantial question as to the appropriateness of the sentence.

Appellant's Brief, pp. 17–18. Based on this statement, Appellant has complied with Rule 2119(f) by claiming that the sentencing court violated § 9271(b).

As to the substantial question prong, in his 2119(f) statement, Appellant argues that, although his 7 to 14 year sentence for third degree murder is in the guideline

---

**8.** We note that Appellant incorrectly states that the maximum sentence for third degree murder is 10 to 20 years. Third degree murder carries a maximum sentence of 20 to 40 years. *See* 18 Pa.C.S.A. 1102(d) ("Notwith-

standing section 1103, a person who has been convicted of murder of the third degree ... shall be sentenced to a term which shall be fixed by the court at not more than 40 years").

range and the trial court "conducted an eminently fair sentencing hearing" where "there is nothing in the record that suggests the Court failed to take into account [Appellant's] personal circumstances," the trial court erred by imposing this sentence because it was too lengthy based on the circumstances of this case. Brief for Appellant, p. 17. In the argument section of his brief, he generally argues that his sentence was inappropriate because it was greater than what was "necessary to effectuate the goals of sentencing based upon an unreasonable assessment of the gravity of [the] offense." Brief for Appellant, p. 20.

 "It is only where an aggrieved party can articulate clear reasons why the sentence issued by the trial court compromises the sentencing scheme as a whole that we will find a 'substantial question' and review the decision of the trial court." *Commonwealth v. Dalberto,* 436 Pa.Super. 391, 648 A.2d 16, 22 (1994). An allegation that a judge "failed to offer specific reasons for [a] sentence does raise a substantial question." *Commonwealth v. Reynolds,* 835 A.2d 720, 734 (Pa.Super.2003) (internal quotations omitted); *Commonwealth v. McNabb,* 819 A.2d 54, 56–57 (Pa.Super.2003). However, "[a]n allegation that the sentencing court "failed to consider" or "did not adequately consider" various factors does not raise a substantial question that the sentence was inappropriate." *See Commonwealth v. McKiel,* 427 Pa.Super. 561, 629 A.2d 1012, 1013 (1993).

 In the instant matter, Appellant has not articulated clear reasons as to why the trial court's sentence on his third degree murder conviction is contrary to the sentencing scheme as a whole. Appellant's argument is simply a claim that the trial court did not adequately consider the circumstances of this case, which does not raise a substantial question. Thus, because Appellant has failed to demonstrate that a substantial question exists, we do not review the discretionary aspects of his sentence.

Judgment of sentence affirmed.