J-S45009-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| LUIS NORBERTO, | |
| Appellant | No. 450 EDA 2013 |

Appeal from the PCRA Order January 18, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0004563-2009

BEFORE:  BOWES, WECHT, and FITZGERALD,[*] JJ.

MEMORANDUM BY BOWES, J.:                    **FILED SEPTEMBER 22, 2014**

Luis Norberto appeals from the January 18, 2013 order dismissing his first petition for post-conviction relief.  We vacate the order and remand to the PCRA court for an evidentiary hearing.

On August 10, 2009, Appellant pled guilty to aggravated assault ("AA"), aggravated assault while driving under the influence ("AA-DUI"), driving under the influence ("DUI"), and criminal mischief. The charges arose from an incident in which Appellant, while under the influence of a controlled substance, caused a four-vehicle crash in the streets of Philadelphia, severely injuring Natalie Trent.  The trial court summarized the pertinent facts:

_____

[*]  Former Justice specially assigned to the Superior Court.

On February 20th of 2009, at about 10:48 in the evening a four-vehicle crash occurred beginning at the intersection of Park Avenue and Somerset Street in Philadelphia, ending one half block west on Somerset Street. It was determined that Unit No. 1[,] which was a 1995 Chrysler Concord being driven by the defendant was travelling westbound on Somerset Street and without any evidence of braking, crashed its front end into the rear end of Unit No. 2. Unit No. 2 was a 2003 Ford Taurus being operated by the victim, Natalie Trent.

After the rear end of her car was hit, the impact crushed the rear right corner approximately 3 feet into the car and redirected her car southwest over to the southwest corner where she made a secondary contact with a PECO pole on the driver's side door. During the course of events of the initial crash, she was forced backwards in the vehicle and rammed her seat back which resulted in her traveling through the rear left window under the seat belt which was found secured and locked consistent with being in use. She was ejected through the window coming to rest on the sidewalk.

The Defendant's car next contacted Unit No. 3, a 1993 Dodge Caravan that was parked there unattended.

The [D]efendant's car continued west contacting the rear of Unit No. 4, a 2006 Dodge Ram, which was parked unattended facing westbound along the north curb line. Defendant's car redirected again and with its right rear side contacted a wooden fence and came to rest.

Ms. Trent was transported from the scene by medics to Temple Hospital, where she was admitted directly to surgery for a completely degloved right arm. The skin and underlying tissue was completely pulled and torn from the bone from her shoulder to her forearm. She also suffered internal injuries and her condition was listed as extremely critical and life threatening.

The Defendant was found next to the driver's side of his car bleeding from his hands, face, and complaining of pain. He was determined to be under the influence of drugs. He was transported to Temple Hospital, where he was treated for his injuries and a blood sample was taken from him.

Accident investigation processed the scene and found that the Defendant's air bags were deployed with blood splattering present on the driver's air bag, as well as blood smearing on the

driver's seat, head rest, and top of the rear door. The left door was pinned closed from damage. There was a concave impression on the underside of the dashboard, left of the steering column, consistent with the area of Defendant's knee impact.

Officers returned to Temple Hospital to examine the Defendant for injuries and found dried blood on his mouth, two cuts on his left hand with large amounts of dried blood on both hands, and a section of skin along the lower edge of the left knee ripped open and bleeding.

The Defendant's blood was tested by Dr. Cohn, who found it to contain 115 nanograms of phencyclidine. Dr. Cohn's opinion was that, the Defendant was incapable of operating a motor vehicle safely on the streets of Philadelphia.

The victim was hospitalized for several months, had four surgeries and was on a ventilator.

PCRA Court Opinion, 12/2/13, at 2-4 (internal citations to the record omitted).

Appellant reviewed and signed a written colloquy. During Appellant's guilty plea hearing, Judge Defino-Nastasi conducted an oral colloquy and advised Appellant of the maximum sentences for the offenses. Appellant affirmatively acknowledged his understanding that by pleading guilty, he was, with limited exceptions, waiving his right to appeal his convictions.

On September 14, 2009, Appellant was sentenced as follows: eight to sixteen years incarceration for aggravated assault; ten years consecutive probation for AA-DUI; seventy-two hours to six months concurrent incarceration for DUI; and seven years concurrent probation for criminal mischief, along with restitution and fines. *Id*. at 1.

- 3 -

Appellant filed this, his first PCRA petition, on August 4, 2010. Counsel was appointed and she filed an amended petition on Appellant's behalf on March 21, 2012 claiming that, due to ineffective assistance of plea counsel:

1.    He was serving an illegal sentence because AA-DUI incorporates DUI for sentencing;

2.    He was serving an illegal sentence because Aggravated Assault and DUI merged with Aggravated Assault by Vehicle while DUI;

3.    The specific elements of the crimes to which he pled guilty were not set forth;

4.    The evidence was insufficient to support a conviction for aggravated assault for failing to establish the proper *mens rea*; and

5.    The trial court's colloquy and written colloquy were deficient.

On September 13, 2012, the PCRA court held a hearing to address the merger of AA-DUI and DUI, as well as the merger of AA with AA-DUI.[1] The PCRA court agreed that, for purposes of sentencing, the AA-DUI and DUI merged, but concluded that vacating the sentencing order would not affect the overall sentencing scheme.[2] The PCRA court did not rule at that time as

_____

[1] No evidence was taken at the hearing; only argument was presented.

[2] All elements of 75 Pa.C.S. § 3802 (DUI) are included within 75 Pa.C.S. § 3735 (AA-DUI). Pursuant to 42 Pa.C.S. § 9765, crimes merge for sentencing where they arise from a single criminal act and all the elements of one offense are included in the statutory elements of the other offense. Where crimes merge, the court may sentence the defendant only for the
*(Footnote Continued Next Page)*

to whether AA merged with AA-DUI. The PCRA court issued Rule 907 notice of its intent to dismiss, and on January 18, 2013, it dismissed the petition. While the PCRA court agreed on the record to vacate the DUI sentence, no formal order was entered.

On February 5, 2013, Appellant filed a notice of appeal to this Court. Judge DeFino-Nastasi issued her Rule 1925(a) opinion on December 2, 2013.[3] Appellant presents the following issue for our review:

> The PCRA court erred by denying appellant post-conviction relief because trial counsel was ineffective because appellant's guilty plea was not knowing and voluntary and appellant pled guilty pursuant to an open guilty plea to an illegal sentence.

Appellant's brief at 8.[4]

In reviewing the decision of the PCRA court, "[a]n appellate court reviews the PCRA court's findings of fact to determine whether they are free

---

*(Footnote Continued)*

higher-graded offense. **See** 42 Pa.C.S. § 9765; **see also Commonwealth v. Tanner**, 61 A.3d 1043 (Pa.Super. 2013), **Commonwealth v. Baldwin**, 985 A.2d 830 (Pa. 2009), and **Commonwealth v. Jones**, 629 A.2d 133 (Pa.Super. 1993).

[3] Appellant was not ordered to file a Pa.R.A.P. § 1925(b) concise statement of errors complained of on appeal.

[4] Appellant raised below, but abandons on appeal, the issue of whether aggravated assault merges with AA-DUI for sentencing purposes. Since this is a legality of sentence question, it may be raised here *sua sponte.* Aggravated assault and AA-DUI do not merge for sentencing purposes because 18 Pa.C.S. § 2702(a)(1) (aggravated assault) includes an intentional, knowing, or reckless *mens rea,* which is not contained within 75 Pa.C.S. § 3735.1 (AA-DUI requiring negligent *mens rea*).

from legal error." ***Commonwealth v. Spotz,*** 84 A.3d 294, 311 (Pa. 2014). Our "scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level." ***Id***.

Appellant claims that plea counsel was ineffective. Obtaining relief on a claim of ineffective counsel requires the petitioner to establish: (1) the underlying claim has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) the petitioner was prejudiced by counsel's act or omission. ***Commonwealth v. Elliot***, 80 A.3d 415, 427 (Pa. 2013), citing ***Commonwealth v. Pierce***, 527 A.2d 973, 975 (Pa. 1987). The appellant must prove that the aforementioned claims have merit and that, had previous counsel pursued them, a more favorable outcome would be probable. ***Spotz***, ***supra***.

In connection with a guilty plea, counsel ineffectiveness can provide a basis for relief only if the ineffectiveness caused an involuntary or unknowing plea. ***Commonwealth v. Barndt***, 74 A.3d 185, 192 (Pa.Super. 2013). An appellant need not be pleased with the outcome after the plea is entered as long as his decision to plead guilty was knowingly, voluntarily, and intelligently made. ***Id***. It must be demonstrated that counsel misled or misinformed appellant and that the appellant acted under misguided influence when entering the guilty plea. ***Commonwealth v. Flanagan***, 854 A.2d 489, 502 (Pa. 2004).

Preliminarily, we agree with the PCRA court that Appellant's conviction for DUI and AA-DUI merged for sentencing purposes, and that the sentence imposed for DUI was illegal. However, Appellant's DUI sentence ran concurrently with his sentence for aggravated assault and had expired by the time of appeal. As there are no civil or criminal consequences remaining, no relief can be granted and the issue is moot. ***Commonwealth v. King***, 786 A.2d 993, 996 (Pa.Super. 2001).

Next, Appellant asserts that counsel was ineffective in advising him to plead guilty to aggravated assault where the alleged conduct did not supply the *mens rea* required to support a conviction. Appellant contends that his actions, though negligent and perhaps reckless, did not rise to the level of malice, citing ***Commonwealth v. McHale****,* 858 A.2d 1209 (Pa.Super. 2004). Thus, Appellant contends, since there is arguable merit in his underlying claim, genuine issues of fact exist as to whether he was properly advised of this deficiency prior to pleading guilty to AA.

In response, the Commonwealth argues the issue is waived under 42 Pa.C.S. § 9544(b) due to Appellant's failure to specifically claim that his plea was involuntary due to his counsel's ineffectiveness in advising him to plead guilty to aggravated assault where the evidence may not support the conviction. Commonwealth brief, at n.1. The Commonwealth also argues generally that the guilty plea was entered knowingly, intelligently, and

voluntarily based on the validity of both the oral and written colloquies presented and agreed to by Appellant.

We find that Appellant's amended petition asserted claims sounding in ineffective assistance of counsel. The issue concerning the voluntariness of Appellant's guilty plea was raised in the PCRA court, albeit worded as a sufficiency of the evidence claim. The PCRA court recognized that Appellant's claim was an ineffectiveness of counsel claim rather than a sufficiency of the evidence claim and treated it as such. **See** PCRA Court Opinion, 12/2/13, at 8, n.1. Since the PCRA court addressed the issue as one of ineffective assistance of counsel, we decline to find waiver. **Cf**. **Commonwealth v. Simpson**, 66 A.3d 253, 261 (Pa. 2013) (Supreme Court rejecting Commonwealth's waiver argument based on pleading defect where petitioner's claim was not dismissed by the PCRA court for that reason).

The PCRA court restated and addressed Appellant's claim as follows:

> The Defendant claims that his trial counsel was ineffective for counseling him to plead guilty to Aggravated Assault, as a felony of the first degree, because the evidence presented by the Commonwealth failed to establish that the Defendant acted with the requisite *mens rea* necessary to sustain his conviction.

PCRA Court Opinion, 12/2/13, at 8. (footnote omitted). It then concluded that counsel was not ineffective because there was no merit to his underlying claim that he lacked the malice to support the AA charge.

Appellant pled guilty to aggravated assault pursuant to 18 Pa.C.S. § 2702(a)(1), which provides:

> A person is guilty of aggravated assault, graded as a felony of the first degree, if he attempts to cause serious bodily injury to another, or causes such injury **intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life**.

18 Pa.C.S. § 2702(a)(1) (emphasis added).

The level of recklessness required for aggravated assault under this subsection rises above the ordinary recklessness needed for lesser charges. **Commonwealth v. O'Hanlon**, 653 A.2d 616, 618 (Pa. 1995). Mere recklessness does not support a conviction on aggravated assault charges unless demonstrated to a degree constituting malice. In **Commonwealth v. Kling**, 731 A.2d 145, 147-48 (Pa.Super. 1999), the court defined malice as "a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty[,]" citing **Commonwealth v. Pigg**, 581 A.2d 571 (Pa.Super. 1990). In **McHale**, **supra**, this Court referenced **Pigg** and explained malice:

> For when such a considerable risk of injury or death has been created and then callously disregarded, the actor demonstrates that he essentially cares not whether he maims or kills another, and when a person consciously creates such a high likelihood that injury or death will ensue, or continues his action after realizing he has created such a risk, he exhibits the "wickedness of disposition, hardness of heart, and cruelty" that is the hallmark of malice…[T]he actor may not actually intend that anyone be injured or killed, but by continuing to act in that fashion the actor demonstrates that he simply does not care whether harm befalls another.

**McHale**, **supra** at 1214.

While operation of a motor vehicle can easily give rise to both negligence and recklessness, it rarely rises to the level of malice. As we

recognized in **McHale**, "unless the driver has essentially a 'death wish,' or steamrolls through a crowd of pedestrians, it would seem unlikely that the recklessness would rise to the level sufficient to find malice." **Id**.

Appellate decisions have dealt with malice in the context of motor vehicle accidents involving intoxicated drivers in the past and have failed to find malice outside of the most extreme circumstances. In **O'Hanlon**, **supra**, the intoxicated appellant drove his vehicle through a red light and collided with another vehicle. Our Supreme Court ruled that intention to inflict harm could not be found under these circumstances, and that while clearly negligent, the defendant's activity did not rise to the level of malice. **O'Hanlon**, **supra** at 618.

In **Commonwealth v. Comer**, 716 A.2d 593 (Pa. 1998), the defendant was driving erratically at high speeds under the influence of alcohol and barbiturates when he lost control of his vehicle and crashed into a bus stand, resulting in the death of one person and serious injury to another. Despite the fatal result of the defendant's actions, our High Court found that he did not possess the state of mind necessary to show malice. **Id**. at 596.

On similar facts in **Commonwealth v. Dellavecchia**, 725 A.2d 186 (Pa.Super. 1998) (*en banc*), this Court held that the evidence failed to support a finding that the defendant possessed a malicious state of mind. There, the intoxicated and speeding defendant drove his vehicle into a

parked car containing a young woman and child. This Court relied upon *Comer*, *supra*, to overturn the aggravated assault convictions. *Id*. We found that, despite driving at excessive speeds and weaving in and out of traffic, the defendant's conduct was less egregious than that of Comer, and thus, did not constitute malice. *Id*. at 189.

Similar, too, were the circumstances in *McHale*, *supra*, relied upon by Appellant herein. There, the defendant had been drinking at a bar throughout the evening. Upon leaving the bar, he attempted to drive home, despite having neither a valid driver's license nor proper insurance coverage. En route, he crashed into a car parked on the side of the road, collided with two people standing near the car, and attempted to drive away. The force of the collision was so strong that the parked car was moved eight inches and the two victims were thrown forty-six and seventy-nine feet, respectively, suffering severe bodily injury and memory loss. There was no evidence that the defendant attempted to brake throughout the collision. *Id*. at 1211-12.

In *McHale*, we conducted an extensive analysis of both aggravated assault and the malicious intent requirement. Upon analyzing the foregoing cases, this Court found that McHale did not possess the malicious state of mind necessary to support an aggravated assault conviction. His behavior was found to be in line with *O'Hanlon* and its progeny despite the severe injuries sustained by the victims, his failure to brake, and his attempt to leave the scene. *Id*. at 1218.

The PCRA court did not discuss the aforementioned cases in arriving at its decision herein. Rather, it relied upon *Kling*, *supra* and *Commonwealth v. Allen*, 833 A.2d 800 (Pa.Super. 2003), in finding malicious intent. In *Allen*, the defendant left a bar after drinking for most of the evening and drove away. While driving, he struck a fifteen-year-old male pedestrian, severing his leg and impaling him on the windshield upon impact. Post impact, the defendant continued to drive for two and one-half miles, at which point the victim's body rolled off the windshield. The defendant did not stop to render aid, but rather continued to drive for another five miles. The victim died shortly thereafter. *Id*. at 801. This Court found the requisite malice due to the defendant's prolonged period of recklessness while directly confronted with the obvious risk of harm to the victim. *Id*. at 804.

In *Kling*, *supra*, as distinguished from the present case and all of the other cases discussed herein, the defendant was not intoxicated at the time of incident, but rather fully conscious and sober. *Kling*, *supra* at 146-47. Kling was drag racing with another vehicle on dangerous mountain roads. His vehicle reached speeds in excess of eighty miles per hour. During the course of the race, the defendant sped around blind turns, narrowly missing a vehicle traveling in the opposite direction, passed two trucks in front of him in a no-passing zone, crossed the center line again heading into a sharp curve, and struck the vehicle driven by the victim, killing her instantly and

severely injuring her son. This Court ruled that Kling's knowledge of the dangerous conditions of the road, coupled with his clear disregard for the safety of others, culminated in a malicious state of mind in which he had to be nearly certain his conduct would result in a serious or fatal incident. *Id*. at 150.

Most recently, in ***Commonwealth v. Dunphy***, 20 A.3d 1215 (Pa.Super. 2011), the defendant was driving under the influence of alcohol at a speed of fifty to sixty miles per hour in a thirty-five mile-per-hour zone when he struck a pedestrian crossing the street. The impact sent the victim soaring through the air and resulted in multiple blunt impact trauma injuries and death at the scene. Witnesses to the incident testified that the defendant briefly braked following the impact, but then sped away. *Id*. at 1217. When eventually arrested, the defendant admitted to the arresting officer that he saw pedestrians crossing the road fifty to one hundred yards in front of him, but that he accelerated nonetheless in order to make the light. *Id.* at 1218.

In ***Dunphy***, we considered the totality of the circumstances and found the defendant to possess the requisite malice to support a third-degree murder charge, noting specifically: (1) the excessive rate of speed in the presence of pedestrians; (2) his admission that he saw the pedestrians and sped up anyway; (3) the distance the victim's body traveled upon impact; (4) the absence of any evidence of a condition that would explain the

defendant's failure to stop; and (5) the defendant's flight after killing the victim. *Id*. at 1219-20.

The facts of the present case, as gleaned from the record, arguably align with **McHale** and its predecessors rather than with **Allen**, **Kling**, and **Dunphy**. While Appellant clearly acted with negligence and perhaps recklessness, the facts arguably do not demonstrate the "extreme indifference to the value of human life" or particularly egregious act exhibited in the latter cases. Furthermore, the fact that Appellant was intoxicated may militate against a finding of the requisite malice for an aggravated assault conviction. As opined by this Court in **McHale**:

> [In] focusing merely on the tragic consequences of these actions, there is a tremendous temptation to allow the "book" to be thrown at [intoxicated drivers]. However, we cannot let out contempt for this irresponsible behavior and compassion for the victims involved supplant the legal standards upheld as a part of a centuries-old common law tradition and enacted by our legislature.

**McHale**, **supra** at 1218.

Although the result herein was horrific, the facts do not on their face demonstrate that Appellant had the "wickedness of disposition, hardness of heart, and cruelty" present in **Allen** (traveling two and one-half miles with a pedestrian impaled on his windshield, then continuing for five miles after he rolled off), **Kling** (drag racing on dangerous roads at excessive speeds and failing to slow down or stop when near accidents occurred), and **Dunphy**

(seeing pedestrians crossing the street and, nevertheless, continuing to speed up to make a light).

We find arguable merit in Appellant's claim that he did not possess the *mens rea* to support an aggravated assault conviction. Thus, we deem it prudent to conduct an evidentiary hearing to ascertain what counsel advised Appellant regarding the wisdom of pleading to aggravated assault in order to determine whether his plea was knowing, intelligent, and voluntary. Therefore, we vacate the order and remand for an evidentiary hearing on this matter.

Order vacated. Case remanded for proceedings consistent with this adjudication. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/22/2014

- 15 -