J-S35029-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| BRYAN ADAM HAMMAKER | : | No. 166 MDA 2023 |

Appeal from the PCRA Order Entered December 30, 2022
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0007339-2019

BEFORE:   PANELLA, P.J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:              **FILED: MARCH 15, 2024**

The Commonwealth appeals from the order granting in part Bryan Adam Hammaker's Post Conviction Relief Act ("PCRA") petition. **See** 42 Pa.C.S.A. §§ 9541-9546. The PCRA court reinstated Hammaker's post-sentence and direct appeal rights based on his plea counsel's ineffectiveness. We affirm.

The PCRA court provided the factual and procedural history as follows:

On November 12, 2019, Newberry Township Police Department filed a criminal complaint against [Hammaker] charging him with two counts of third-degree murder, two counts of homicide by vehicle while under the influence of alcohol or a controlled substance, aggravated assault, aggravated assault by motor vehicle while under the influence of alcohol, two counts of homicide by vehicle, aggravated assault by vehicle, six counts of driving under the influence, reckless driving, driving at a safe speed, driving on the right side of the roadway, two counts of careless driving – unintentional death, and careless driving – serious bodily injury.

---

[*] Retired Senior Judge assigned to the Superior Court.

Charges arose out of an investigation of a single vehicle crash that occurred on December 1, 2018, on Old Trail Road in Newberry Township, York County, Pennsylvania. From the affidavit of probable cause, this court finds that the subject vehicle, with [Hammaker] as driver, left the roadway and the right rear passenger seat occupant (Stevens) was ejected from the vehicle and died as a result of the impact. The left rear passenger seat occupant (Klaiber) was crushed within the vehicle, resulting in his death. The cause of death of the two passengers was indicated after autopsy from "multiple blunt force injuries." The owner of the vehicle (Baumgardner) was occupying the front passenger seat and suffered multiple fractures.

The roadway was posted for maximum speed of forty (40) miles per hour. [Hammaker's] speed a few seconds prior to impact was estimated at eighty-nine (89) miles per hour, with speed at the time of impact to be estimated at sixty-two (62) miles per hour. [Hammaker's] blood alcohol concentration was 0.125 and his blood also tested positive for THC, Fentanyl and Midazolam.

From the time of the filing of the criminal complaint through the entry of his guilty plea, [Hammaker] was represented by Patrick Lauer, Esquire (hereinafter "plea counsel").

***

On December 9, 2020, [Hammaker] entered a negotiated plea of guilty to two counts of murder in the third degree, one count of aggravated assault, two counts of homicide by vehicle while under the influence, one count of aggravated assault by motor vehicle while under the influence and driving under the influence. Pursuant to the negotiated agreement, [Hammaker] was sentenced to an aggregate period of fifteen (15) to thirty (30) years['] incarceration in a state correctional institution. [Hammaker] is not RRRI eligible. No post-sentence motion or appeal was filed.

[Hammaker] filed a *pro se* petition for post-conviction relief on September 23, 2021. This [c]ourt appointed counsel on October 8, 2021, to represent [Hammaker]. PCRA counsel filed an amended petition for post-conviction relief on March 28, 2022. During a hearing on the issues, both the Commonwealth and [Hammaker] presented testimony and exhibits for consideration.

PCRA Court Opinion in Support of Order Granting in Part and Denying in Part Defendant's PCRA Petition ("PCRA Ct. Op."), filed 12/30/22, at 1-4.

After the hearing, the PCRA court granted in part Hammaker's petition. It found that plea counsel was ineffective for failing to properly advise Hammaker as to the requirement of malice when he pleaded guilty to third-degree murder and aggravated assault. *Id.* at 11. The court reinstated Hammaker's post-sentence and appellate rights. *Id.* at 16. The Commonwealth appealed.

The Commonwealth raises the following issue:

> Did the PCRA court err in granting [Hammaker's] PCRA petition where plea counsel was aware of the malice standard required to prove [m]urder of the [t]hird [d]egree and [a]ggravated [a]ssault and appropriately advised [Hammaker] of his professional opinion regarding the case, including advising [Hammaker] of the facts of the case, the elements of the crimes, and the nature of malice required for conviction, and did not induce [Hammaker] in any way to plead guilty?

Commonwealth's Br. at 4.

On appeal from the denial or grant of relief under the PCRA, our review is limited to determining "whether the PCRA court's ruling is supported by the record and free of legal error." **Commonwealth v. Presley**, 193 A.3d 436, 442 (Pa.Super. 2018) (citation omitted).

"[C]ounsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on" the party claiming otherwise. **Commonwealth v. Rivera**, 10 A.3d 1276, 1279 (Pa.Super. 2010). To obtain relief based on a claim of ineffectiveness, a petitioner must establish: "(1) his underlying claim

is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result." *Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014).

A criminal defendant's right to effective counsel extends to the plea process. *Commonwealth v. Brown*, 235 A.3d 387, 391 (Pa.Super. 2020). "Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused [the petitioner] to enter an involuntary or unknowing plea." *Id.* (citation omitted). "Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Id.* (citation omitted). "[T]o establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* (citation omitted).

The Commonwealth argues the PCRA court erred in finding plea counsel ineffective because there was sufficient evidence of malice necessary to support the charges of third-degree murder and aggravated assault. Commonwealth's Br. at 9. It maintains that plea counsel properly advised Hammaker of the facts of the case, the elements of the crimes, and the nature of malice required for third-degree murder and aggravated assault, such that Hammaker's plea was not unlawfully induced. *Id.* at 10.

The Commonwealth further argues that Hammaker signed the Information charging him with third-degree murder and aggravated assault at

- 4 -

the conclusion of his guilty plea, which specifically acknowledged that he knowingly or recklessly "under circumstances manifesting an extreme indifference to the value of human life" caused the deaths and serious bodily injury to his passengers. *Id.* at 14. The Commonwealth emphasizes that Hammaker admitted at the time of his guilty plea that he drove someone else's car, which had been modified, at a grossly excessive speed of more than twice the speed limit after imbibing alcohol and marijuana. *Id.* at 15-16. The Commonwealth maintains that the totality of those factors was sufficient to establish the malice required for third-degree murder and aggravated assault. *Id.* at 16. As a result, it concludes that because there was evidence of malice, "plea counsel clearly had a reasonable basis for advising his client that he could be convicted of third-degree murder and/or aggravated assault." *Id.* at 17.

Pursuant to 18 Pa.C.S.A. § 2501(a), "[a] person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being." Third-degree murder is any murder that is not murder in the first or second degree, that is, not an intentional killing or one committed in the commission of a felony. *See* 18 Pa.C.S.A. § 2502(c). The *mens rea* required for a conviction of third-degree murder is malice. ***Commonwealth v. Packer***, 168 A.3d 161, 168 (Pa. 2017). "Murder in the third degree is an unlawful killing with malice but without the specific intent to kill." ***Commonwealth v. Dunphy***, 20 A.3d 1215, 1219 (Pa.Super. 2011).

A person is guilty of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S.A. § 2702(a)(1). Like third-degree murder, the *mens rea* for a conviction of aggravated assault is malice. *Packer*, 168 A.3d at 168.

> Malice in its legal sense is a:
>
> wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured. Malice may be found where the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause serious bodily injury.

*Dunphy*, 20 A.3d at 1219 (citation omitted) (cleaned up).

As to third-degree murder and aggravated assault, "our courts have consistently held that malice is present under circumstances where a defendant did not have an intent to kill, but nevertheless displayed a conscious disregard for an unjustified and extremely high risk that his actions might cause death or serious bodily harm." *Packer*, 168 A.3d at 168 (citations omitted). However, "a person who acts negligently or with ordinary recklessness to cause a person to suffer serious bodily injury or death has not committed third-degree murder or aggravated assault, respectively." *Id.* at 169.

Motor vehicle accidents seldom involve malice such as is needed to sustain a conviction for third-degree murder or aggravated assault.

- 6 -

*Commonwealth v. McHale*, 858 A.2d 1209, 1214 (Pa.Super. 2004). In the DUI context, "the decision to drive while under the influence of alcohol and/or a controlled substance does not, standing alone, constitute malice." *Packer*, 168 A.3d at 170. "[I]n the vast majority of prosecutions involving deaths or injuries caused by defendants driving under the influence, third-degree murder and aggravated assault should not be charged" because the standard for malice "requires recklessness of consequences and the conscious disregard for an unjustified and extremely high risk that a chosen course of conduct might cause a death or serious personal injury." *Id.* at 172. Therefore, "unless the driver has essentially a 'death wish,' or steamrolls through a crowd of pedestrians, it would seem unlikely that the recklessness would rise to the level sufficient to find malice." *McHale*, 858 A.2d at 1214 (footnote omitted).

This Court in *McHale* further noted:

> In light of the reality that most motor vehicle accident cases, even those caused by a drunk driver, will not evidence the *mens rea* of malice, the legislature has enacted lesser offenses that can be charged, which were specifically designed to address a situation where malice is lacking but where heightened criminal punishment is deemed appropriate, such as aggravated assault by vehicle while [DUI], and homicide by vehicle-DUI related. In particular, the aggravated assault by vehicle while driving under the influence offense requires only **negligence** and not recklessness. This lowered requisite intent is reflected in the classification of the offense as well; aggravated assault is a felony of the first degree whereas aggravated assault while DUI is a second[-]degree felony.

858 A.2d at 1217-18 (emphasis in original) (footnote omitted).

In **Packer**, our Supreme Court examined appellate decisions involving third-degree murder and aggravated assault charges in similar contexts as the present case. There, the Court observed:

> In **Commonwealth v. O'Hanlon**, a drunk driver ran a red light and struck another vehicle, seriously injuring the other driver. We found this evidence to be insufficient to sustain a conviction of aggravated assault. **O'Hanlon**, 653 A.2d [616, 618 (Pa. 1995)]. We observed that neither "ordinary negligence" nor "mere recklessness" is sufficient to satisfy the *mens rea* of aggravated assault. **Id.** at 617-18. Instead, we found that the crime "requires a higher degree of culpability, *i.e.*, that which considers and then disregards the threat necessarily posed to human life by the offending conduct," and entails "an element of deliberation or conscious disregard of danger[.]" **Id.** at 618.
>
> ***
>
> The **O'Hanlon** Court found that the requisite *mens rea* is only met in circumstances where "the defendant could reasonably anticipate that serious bodily injury or death would be the likely and logical consequence of his actions . . . [but] the consequence was ignored." **Id.**
>
> We subsequently decided **Commonwealth v. Comer**, 552 Pa. 527, 716 A.2d 593 (1998), another case challenging the sufficiency of the evidence to support a conviction of aggravated assault that occurred while the defendant was driving under the influence of alcohol and controlled substances. The defendant in **Comer**, who drove after drinking and ingesting "muscle relaxers," struck two people who were waiting for a bus, killing one and seriously injuring the other. **Id.** at 595. He was observed just prior to the accident traveling at a high rate of speed, in excess of the speed limit. His right tire rubbed against the curb and his car veered off the road, crashing through a bus stand and into a brick wall, striking the two pedestrians in the process.
>
> The **Comer** Court found that the evidence was insufficient to prove that the defendant acted with malice. The accident occurred immediately after he was observed speeding and his tire rubbed along the curb. **Id.** at 597. Examining his behavior before and after the accident, the Court found no evidence "that he was aware of his reckless conduct" and that he "considered, then

disregarded, the threat to the life of the victim." ***Id.*** at 596–97. Finding the facts to be sufficiently similar to those in ***O'Hanlon***, we concluded that the conviction of aggravated assault must be reversed. ***Id.***

***Packer***, 168 A.3d at 170.

The Court, however, found the facts in ***Packer*** distinguishable from ***O'Hanlon*** and ***Comer***, and found the defendant in ***Packer*** acted with the requisite malice to support convictions of third-degree murder and aggravated assault. ***Id.*** at 171. In ***Packer***, the defendant inhaled difluoroethane ("DFE") immediately before and while driving resulting in a deadly automobile accident. In finding that the defendant acted with malice, the Court stated:

> Packer huffed DFE both immediately prior to and while operating a vehicle on a public highway. She knew, from the clearly marked label and the bittering agent added to the Dust–Off, that this product was not intended to be ingested. She further knew, from her numerous prior experiences with huffing, that the effects of DFE on her were immediate, debilitating and persisted for ten to fifteen minutes following inhalation. Moreover, she knew that huffing had caused her to lose consciousness on other occasions in the past.
>
> With all of this knowledge about DFE and the immediate and overwhelming effects it had on her, she nonetheless made the conscious and informed decision to huff four or five bursts of DFE, inhaling the chemical for a total of fourteen to twenty-four seconds within a five-minute timespan. She inhaled immediately before driving on a public roadway and again while temporarily stopped at a red light. Precisely what had previously occurred after huffing happened to her again on the night in question – after inhaling her final bursts of DFE at the red light and proceeding to drive her vehicle on the public highway, she lost consciousness. Predictably, without control of her vehicle, she killed [the victim].

***Id.*** (citations to the record omitted). The ***Packer*** Court noted that the case was "not a typical case of ordinary recklessness that arises when someone

chooses to drive while intoxicated" and that because of the defendant's history of losing consciousness after huffing and her knowledge of the immediacy of the effects of huffing on her, she could anticipate that serious bodily injury or death would be the likely consequence of her actions, but the consequence was ignored. *Id.* The Court emphasized that "[t]here is a significant difference between deciding to drive while intoxicated and deciding to drive with knowledge that there is a strong likelihood of becoming unconscious[,]" and likened the latter as a decision to play Russian roulette. *Id.* at 172. The Court reaffirmed the standard for malice "requires recklessness of consequences and the conscious disregard for an unjustified and extremely high risk that a chosen course of conduct might cause a death or serious personal injury[,]" but concluded "this case is one of the few driving while under the influence cases that meets the standard of malice." *Id.*

Here, the PCRA court determined that Hammaker would not have pleaded guilty to third-degree murder and aggravated assault if plea counsel properly advised him of the malice standard. PCRA Ct. Op. at 15. It determined that plea counsel's "lack of knowledge in this area of the law led to a manifest injustice in that portion of [Hammaker's] plea." *Id.* The court noted:

> [N]either the affidavit of probable cause nor [Hammaker's] allocution at his plea hearing address the element of malice to the level required under current case law. This [c]ourt [which was also the plea court] failed to adequately question [Hammaker] on the issue of malice, a required element of the crimes in question. There was no indication at the plea hearing or the PCRA hearing that plea counsel discussed this important element with [Hammaker]. [Hammaker's] allocution only acknowledges his BAC, drug use and high rate of speed and no advance recognition

- 10 -

that his conduct could have resulted in death or serious bodily injury to another. There is arguable merit to his claim that the allocution does not rise to the level of malice. No further information was put on the record by the Commonwealth or plea counsel.

*Id.* at 14. The court also concluded that "the failure of plea counsel . . . was the root cause of why [Hammaker] did not seek to withdraw his plea or file a direct appeal." *Id.* at 8.

A review of the record confirms the PCRA court's conclusions and supports its finding that counsel was ineffective under the three-prong test for ineffectiveness. First, Hammaker's underlying claim that the Commonwealth would not have been able to prove malice on his third-degree murder and aggravated assault charges has arguable merit. As outlined above, only rare DUI cases rise to the level of the requisite *mens rea* of malice for third-degree murder and aggravated assault. The Commonwealth's reliance on defendant's "becom[ing] intoxicated and then driv[ing] a vehicle that was not his and which had been modified" around a curve at speeds more than twice the legal speed limit" is misplaced, in view of precedent. **See Comer**, 716 A.2d at 595. Although Hammaker's actions were reprehensible, the instant record is devoid of evidence that he consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily injury.

Next, counsel had no reasonable basis for having Hammaker plead guilty to third-degree murder and aggravated assault where the requirement of malice could not be established and was not shown during Hammaker's guilty plea colloquy. Although plea counsel testified at the PCRA hearing that he

- 11 -

discussed the malice requirement with Hammaker, the PCRA court did not credit counsel's testimony. "A PCRA court passes on witness credibility at PCRA hearings, and its credibility determinations should be provided great deference by reviewing courts." **Commonwealth v. Johnson**, 966 A.2d 523, 539 (Pa. 2009). Moreover, plea counsel testified that he thought the plea court mentioned malice in its plea colloquy, but he could not recall if the word "malice" was brought up at the colloquy. N.T. PCRA Hearing, 9/19/22, at 31. As the PCRA court recognized, the plea court did not, in fact, colloquy Hammaker on the issue of malice.

Lastly, Hammaker established prejudice as he showed he would not have pleaded guilty to third-degree murder and aggravated assault and would have insisted on going to trial on those charges. Accordingly, the PCRA court did not err in granting in part Hammaker's PCRA petition and reinstating his post-sentence and appellate rights.

Order affirmed.

President Judge Panella joins the memorandum.

Judge Colins concurs in the result.

Judgment Entered.

![signature of Benjamin D. Kohler]

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/15/2024