J-S03038-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RYAN HUMMEL | |
| Appellant | No. 1420 EDA 2015 |

Appeal from the Judgment of Sentence July 26, 2011
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0015986-2010

BEFORE:  FORD ELLIOTT, P.J.E., OTT, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                **FILED JANUARY 22, 2016**

Appellant Ryan Hummel appeals from the July 26, 2011 judgment of sentence entered in the Philadelphia County Court of Common Pleas following his guilty plea conviction for aggravated assault.  We affirm.

The trial court summarized the factual history as follows:

> On 10-30-10[,] at approximately 9:30 [p.m.,] the complainant along with his friend[s] [ ] were walking in the 12000 block of Dunksferry [Road] and two girls later identified as defendant Amanda Fox and Nicole Zambito were standing in front of them blocking the sidewalk.  Defendant Fox then stated[,] "You cannot pass unless you tell us your names." Defendant Fox also stated[,] "My name is Amanda Fox.["]  The complainant then said his name and gave defendant Fox a weird look.  Amanda then stated[,] "Why are you giving me a dirty look?"  A white male later identified as [Appellant] approached the complainant and his friends. Defendant Fox then stated[,] "If you give me a dirty look[,] my boyfriend will beat you up."  [Appellant] then punched the complainant in the nose with a closed  fist[,] . . . the

complainant fell into the street and [Appellant] continued to punch complainant in the face area numerous times.

The complainant's friends then led the complainant to another friend's house where the complainant called his mother.

On October 31, 2010[,] the complainant was taken to Aria Health Torresdale Campus emergency room. The complainant suffered from a broken nose and his hearing was diminished. A large piece of flesh was torn from the complainant's upper left side of his lip. The complainant also suffered from swelling to his head and face. The complainant had surgery on 11-03-10[,] and had two stents placed in his nasal cavity so that he could breathe through his nose. The surgeon advised the complainant's mother that[,] if he didn't have the surgery[,] he would never be able to breathe through his nose again. The bones in the complainant's nose were realigned. The complainant was also scheduled for another surgery on 11-11-10. . . .

*See* Presentence Report, dated July 19, 2011, attached Philadelphia Police Department Arrest Report, DC# 1008046691, Northeast Detective Division.

Opinion, 6/22/2015, at 1-2. On May 20, 2011, Appellant pled guilty to aggravated assault.[1] On July 26, 2011, the trial court sentenced Appellant to 48 to 186 months' incarceration. On August 5, 2011, Appellant filed a post-sentence motion.[2]

_____

[1] 18 Pa.C.S. § 2702(a).

[2] This motion would have been denied by operation of law on December 2, 2011. This denial was not entered on the criminal docket. On May 12, 2015, after Appellant filed a *pro se* PCRA petition and counseled amended PCRA petition, the trial court issued an order denying the post-sentence motion by operation of law.

On June 14, 2012, Appellant filed a PCRA petition. On August 19, 2014, appointed counsel filed an amended petition. On May 12, 2015, the PCRA court re-instated Appellant's appellate rights *nunc pro tunc*. Appellant filed a notice of appeal that same day. Both Appellant and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Appellant raises the following issue on appeal:

> Whether [Appellant's] sentence of 48 to 186 months was harsh and excessive because [Appellant] was a juvenile at the time of the incident and he was sentenced in the aggravated range of the sentencing guidelines.

Appellant's Brief at 5. Appellant's issue challenges the discretionary aspects of his sentence.

"Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Allen*, 24 A.3d 1058, 1064 (Pa.Super.2011) (citing *Commonwealth v. Sierra*, 752 A.2d 910, 912 (Pa.Super.2000)). Before this Court can address a discretionary challenge, we must engage in a four-part analysis to determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.

*Commonwealth v. Austin*, 66 A.3d 798, 808 (Pa.Super.2013) (quoting *Commonwealth v. Malovich*, 903 A.2d 1247, 1250 (Pa.Super.2006)); *see also Allen*, 24 A.3d at 1064.

Appellant raised the issue in a timely post-sentence motion, filed a timely notice of appeal, and included a statement of reasons relied upon for allowance of appeal pursuant to Rule 2119(f) in his brief. We must, therefore, determine whether his issue presents a substantial question and, if so, review the merits.

"The determination of whether a particular issue raises a substantial question is to be evaluated on a case-by-case basis." *Commonwealth v. Dunphy*, 20 A.3d 1215, 1220 (Pa.Super.2011) (quoting *Commonwealth v. Fiascki*, 886 A.2d 261, 263 (Pa.Super.2005)). A substantial question exists where a defendant raises a "plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process." *Commonwealth v. Dodge*, 77 A.3d 1263, 1268 (Pa.Super.2013) (quoting *Commonwealth v. Naranjo*, 53 A.3d 66, 72 (Pa.Super.2012)).

In his Rule 2119(f) statement, Appellant maintains he raises a substantial question because the sentence imposed is "so disproportionate as to implicate the fundamental norms that underlie the sentencing process." Appellant's Brief at 2. He claims his sentence was excessive and contrary to the norms that underlie the sentencing process. *Id.* at 2-4. In addition, in his brief's argument section, he further claims the trial court did

not discuss how the sentence would address Appellant's rehabilitative needs.[3]  *Id.* at 12-13.

Appellant failed to raise a substantial question in his Rule 2119(f) statement.  Bald allegations of excessiveness, without more, will not raise a substantial question.  *See, e.g., Commonwealth v. Caldwell*, 117 A.3d 763, 768 (Pa.Super.2015) (*en banc*) ("An appellant making an excessiveness claim raises a substantial question when he sufficiently articulates the manner in which the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process.").  In his argument section, however, Appellant raises a substantial question when he couples his excessiveness claim with a claim the court did not consider his rehabilitative needs.  *Id.* at 770 ("an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating

---

[3] Appellant also claims the trial court erred because it failed to consider that Appellant was a juvenile at the time of the offense.  Appellant's Brief at 12-13.  This Court has stated, however, that the "principles and policies of the juvenile system are no longer applicable where the juvenile court has assessed the potential for the juvenile's rehabilitation; determined that the defendant would not benefit from treatment as a juvenile offender; and transferred the juvenile's case to adult criminal court."  *Commonwealth v. Berry*, 785 A.2d 994, 997 (Pa.Super.2001).

factors—raises a substantial question" (quoting **Commonwealth v. Raven**, 97 a.3d 1244, 1253 (Pa.Super.2014))).[4]

"Sentencing is a matter vested within the discretion of the trial court and will not be disturbed absent a manifest abuse of discretion." **Crump**, 995 A.2d at 1282 (citing **Commonwealth v. Johnson**, 967 A.2d 1001 (Pa.Super.2009)). "An abuse of discretion requires the trial court to have acted with manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." **Id.** (citing **Commonwealth v. Walls**, 926 A.2d 957 (Pa.2007)).

The trial court thoroughly explained its reasons for imposing the standard range sentence[5] and the court did not abuse its discretion. **See**

---

[4] Appellant should have included all reasons a substantial question existed in his Rule 2119(f) statement. **See** Pa.R.A.P. 2119(f) ("An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in a separate section of the brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence"); **Commonwealth v. Goggins**, 748 A.2d 721, 726 (Pa.Super.2000) ("this Court has reviewed 'discretionary aspects of a sentence' where the Rule 2119(f) statement reveals a plausible argument that procedures followed by the sentencing court were either inconsistent with a specific provision of the Sentencing Code or contrary to the fundamental norms underlying the sentencing process"). However, because the trial court opinion contains an analysis and we can discern Appellant's argument from his brief, we will consider the reasons contained within the argument section of the brief together with the reasons raised in the Rule 2119(f) statement.

[5] Although Appellant maintains his sentence was in the aggravated range, Appellant's Brief at 6, the trial court imposed a standard range sentence. The sentencing guideline range was 36 to 48 months. The trial court imposed a sentence of 48 to 186 months' incarceration. Because the
*(Footnote Continued Next Page)*

Opinion, 6/22/2015, at 4-9 (explaining it considered mitigating factors, including Appellant's guilty plea and letters submitted on his behalf, and considered aggravating factors, including Appellant's multiple juvenile adjudications, probation violations, and adult conviction, that Appellant was 59 days into a probation imposed for an aggravated assault when he committed the current offense, that Appellant "beat a [fourteen-]year-old boy to a pulp" because "he looked at [Appellant's] girlfriend funny," the severity of the victim's injuries, and Appellant's lack of remorse). Therefore, we affirm on the basis of the trial court opinion.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/22/2016

---

(Footnote Continued) _____

minimum sentence imposed, 48 months' incarceration, was within the sentencing guideline range, the sentence imposed was within the standard range. 204 Pa.Code § 303.16(a)(4) ("All numbers in sentence recommendations suggest months of minimum confinement pursuant to 42 Pa.C.S. 9755(b) and 9756(b).").

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

COMMONWEALTH OF
PENNSYLVANIA

:
: **CP-51-CR-0015986-2010**
:
:
v. :
:
: **SUPERIOR COURT**
: **1420 EDA 2015**

RYAN HUMMEL :
:
CP-51-CR-0015986-2010 Comm. v. Hummel, Ryan
Opinion :
:
**FILED**


7310212051

**O P I N I O N**

JUN **2 2** 2015
Criminal Appeals Unit
First Judicial District of PA

**CHRIS R. WOGAN, J.**

## Facts

Fifty-nine (59) days into defendant's probation imposed by this court for two assault cases, the following occurred:

According to the police paperwork,

> On 10-30-10[,] at approximately 9:30 PM[,] the complainant along with his friend[s] [ ] were walking in the 12000 block of Dunksferry [Road] and two girls later identified as defendant Amanda Fox and Nicole Zambito were standing in front of them blocking the sidewalk. Defendant Fox then stated[,] "You cannot pass unless you tell us your names." Defendant Fox also stated[,] "My name is Amanda Fox.["] The complainant then said his name and gave defendant Fox a weird look. Amanda then stated[,] "Why are you giving me a dirty look?" A white male later identified as defendant Ryan Hummel approached the complainant and his friends. Defendant Fox then stated[,] "If you give me a dirty look[,] my boyfriend will beat you up." Defendant Hummel then punched the complainant in the nose with a closed

1

D12

fist[,] ... the complainant fell into the street and defendant Hummel
continued to punch complainant in the face area numerous times.
The complainant's friends then led the complainant to another friend's
house where the complainant called his mother.
On October 31, 2010[,] the complainant was taken to Aria Health
Torresdale Campus emergency room. The complainant suffered from
a broken nose and his hearing was diminished. A large piece of flesh
was torn from the complainant's upper left side of his lip. The
complainant also suffered from swelling to his head and face. The
complainant had surgery on 11-03-10[,] and had two stents placed in
his nasal cavity so that he could breathe through his nose. The
surgeon advised the complainant's mother that[,] if he didn't have the
surgery[,] he would never be able to breathe through his nose again.
The bones in the complainant's nose were realigned. The
complainant was also scheduled for another surgery on 11-11-10. ...

*See Presentence Report*, dated July 19, 2011, attached Philadelphia Police
Department Arrest Report, DC#1008046691, Northeast Detective Division.


## Appellate Procedure

Defendant pleaded guilty to felony one aggravated assault before this court

on May 20, 2011 (CP-51-CR-0015986-2010). On July 26, 2011, defendant was

sentenced by this court to 48 months to 186 months incarceration (4 to 15 ½ years).

On August 4, 2011, defendant filed a post-sentence motion that was denied by

operation of law ninety (90) days later.

On May 11, 2015, at a PCRA hearing before this court, the Commonwealth

agreed that defendant's appellate rights should be restored *nunc pro tunc*.

Defendant filed a Notice of Appeal on May 12, 2015. On May 13, 2015,

this court ordered defendant to file a 1925(b) Statement within 21 days of the date

of the Order.  On May 27, 2015, appellate counsel Elayne C. Byrn, Esquire, sent

this court defendant's 1925(b) Statement, naming one issue for appeal:

> "1. Whether defendant's sentence of 48 to 186 months was harsh and excessive because the defendant was a juvenile at the time of the incident and he was sentenced in the aggravated range of the sentencing guidelines."

## Discussion

The above issue can be disposed of immediately—the law is clear that, when

a hearing is held in juvenile court and the juvenile is certified as an adult, there is

no need for the adult court to again review at sentencing that defendant was a

juvenile at the time the crime was committed.  All juvenile considerations were

reviewed, discussed, and disposed of at the certification hearing.  Therefore, the

above claim fails outright.  *See Commonwealth v. Berry, 785 A.2d 994,997*

*(2001)(citation omitted)*("we do not decide that the rehabilitative needs of a person

appellant's age are not significant matters for a court's attention. Rather, we

conclude that the statute governing juvenile matters places the consideration of

these needs in the juvenile court when it decides the question

of certification to adult court. ...  Once these needs have been assessed, and the

accused is transferred to criminal court, the sentence following conviction rests

within the adult sentencing court's discretion.  ... Because the court was statutorily

required to consider appellant's rehabilitative needs when deciding

the certification issue, and because that issue was adequately addressed in this

3

case, we find that appellant fails to raise a substantial question warranting review of the discretionary aspects of his sentence"). *See Berry, supra.*

Also, if appellant's sentence is within the statutory limits, which it is in this case[1], "his challenge is to the discretionary aspect of his sentence, from which there is no appeal as of right. Such an appeal may be granted by the appellate court where it appears that there is a substantial question that the sentence imposed is not consistent with the specific provisions of the sentencing code or the sentence is contrary to the fundamental norms that underlie the sentencing process. … [O]rdinarily, a claim that the sentencing court failed to consider or accord proper weight to a specific sentencing factor *does not* raise a substantial question." *Berry, supra*, at 996-997. For the above two reasons, defendant's claim that this sentencing court did not consider that he was a juvenile at the time of the incident is not a substantial question for appellate review.

Despite that defendant's claim fails outright, this court will clarify that the sentence was not in the aggravated range, but fell within the standard range of the guidelines.

This court will also clarify that the sentence was in no way harsh and excessive in light of the fact that defendant has demonstrated within a short time

---

[1] For an aggravated assault first-degree felony conviction, defendant could have legally been sentenced up to 20 years imprisonment. *See* 18 Pa.C.S. §1103.

period that he is an explosively violent person who is dangerous to those unfortunate enough to be around him at the time he unleashes his violence.

At sentencing, the court set out that the standard range sentence would be 36 months to 48 months, plus or minus 12 (N.T.7/26/11, p. 3-5). And, the mandatory minimum sentence for an aggravated assault against a minor, under 42 Pa.C.S. §9718, required this court to impose a sentence of at least 2 years imprisonment (id. at 5-6).

Defense counsel argued that the 18 year-old defendant expressed remorse and a "willingness" to get into anger management counseling, and offered that a good component of the sentence would be for defendant to get education counseling (N.T. 7/26/11, p. 7). Defense counsel also did argue that defendant has the ability to be rehabilitated since he is young. In addition, counsel offered many letters of support written and attached to defendant's sentencing memo (id. at 7-8). Counsel acknowledged defendant's supportive family and friends, some of whom were present in court for sentencing (id. at 8). *See Defendant's Sentencing Memorandum*, dated July 25, 2011.

The Commonwealth noted that she and defense counsel had already agreed to mitigate the guidelines. She pointed out the serious bodily injury in this case, and generally argued that defendant used a "deadly weapon" where he is a boxer punching a 14 year-old in the face (N.T. 7/26/11, p. 9-10).

The Commonwealth also listed defendant's criminal history. In January, 2007, he was adjudicated delinquent for a simple assault and placed in an institution. In August, 2007, he was arrested for stalking. In August, 2007, he was adjudicated for simple assault on one case, and also had another simple assault, disorderly conduct and resisting arrest case—he assaulted two police officers and another youth. Defendant was placed in St. Gabriel's Hall correctional institution and fled after two days, later mocking the police on the internet regarding their attempts to find him (N.T. 7/26/11, p. 9-12); *see Presentence Report,* dated July 19, 2011.

The Commonwealth set out:

> Defendant was eventually committed to Youth Detention Center New Castle[,] which is one of the most restrictive forms of punishments that a juvenile can face. And it focuses on rehabilitation as well.
> When he was discharged from that, in May of 2008, he was on juvenile probation, and then had an admission in May of 2010 for ... unauthorized use of an auto.
> And then in December of 2010, while still on probation just a few months later, he picked up the aggravated assault that is the subject of [the court's] VOP. In that case, it was late night in front of a bar.[2]

---

[2] In regard to defendant's VOP cases before this court: .

"On January 20, 2010[,] the defendant, ... Hummel, was arrested and charged with two counts of Aggravated Assault [for] stabbing the victim, Thomas Bozarth, five times in his shoulder and back with an unknown object and punching and hitting another victim, [...], about the head and body." Excerpt cited from *"Commonwealth's Motion To Proceed With Probation Violation Hearing Pursuant To Commonwealth v. Daisy Kates...,"* ¶1.

6

At that time, he would have been ... 17[ ] years-old. And he stabbed one person resulting in five stab wounds to that person, and another person was cut on top of the head, but it was more of a graze than a stab wound. ...

[This court] did give him the benefit of the plea in the VOP, and gave him probation, and gave him a chance to try to rehabilitate himself again, even though the amount of resources that have already been put into [defendant] from 2006 on is almost outrageous.

...

...In his PSI, he seems to have a relatively supportive and stable upbringing with his mom and stepfather.

His stepfather is self-employed [and has given the defendant the opportunity to work with him]. And he laughed in the face of that and the efforts that they made to help him.

...two months after he is sentenced in front of [this court], he beat[ ] up a 14 year-old boy, an eighth grader, for no reason. I see no reason to mitigate. I only see reasons to aggravate.

... He is a violent person.

..., the [defendant] stated that he is not a criminal.

He is a criminal. And saying that he is not a criminal, he is not willing to accept responsibility for the things he has done.

He is not willing to see himself in the light that the community of Philadelphia sees him[ ] as a thug who stabs people, who steals from people, who assaults people, who beats up a little kid.

...

(N.T. 7/26/11, p. 13-15); *see also Presentence Investigation Sentencing Guideline*

*Form,* dated July 20, 2011.

---

"On August 31, 2010, the defendant appeared before [the Honorable Chris R. Wogan] and entered into a non-negotiated plea for one count of Aggravated Assault (F2) and Possession of an Instrument of Crime (M1) on CP-51-CR-001248-2010 and one count of Possession of an Instrument of Crime (M1) and Simple Assault (M2) on CP-51-CR-001249-2010. [Judge Wogan] sentenced the defendant to 6 years of probation on the Aggravated Assault charge and a concurrent 5 years of probation on the PIC charge on CP-51-CR-001248-2010. [Judge Wogan] sentenced the defendant to serve 5 years of probation on the PIC charge and a consecutive year probation on the Simple Assault charged on CP-51-CR-001249-2010." Excerpt cited from *"Commonwealth's Motion To Proceed With Probation Violation Hearing Pursuant To Commonwealth v. Daisy Kates...,"* ¶2.

7

When exercising his right to allocution, defendant stated that he was:

> ...sorry to everybody. I know I did wrong. I messed up a lot. I just wasn't in the right state of mind.
> My little brother is 14. If I had hit him, I'd feel less than a man. I was 17. I should be doing something positive with my life. I chose the wrong route.

(N.T. 7/26/11, p. 18).[3]

When imposing its sentence, this court pointed out that fifty-nine (59) days into this court's probation, defendant attacked someone else (N.T. 7/26/11, p. 20).

This court also explained the severity of the bodily injury in this case: the victim had a broken nose, lost flesh from part of his lip, and needed reconstructive surgery (N.T 7/26/11, p. 11). Defendant continued to smash the victim while he was laying on the ground (id. at 20). The reason defendant beat the 14 year-old boy to a pulp was "because he looked at [his] girlfriend funny."[4]

At sentencing, this court read defendant's letter to this court dated January 28, 2011, that was "all about [defendant]" and "...[didn't] say that you're sorry that you pulverized a 14 year-old victim's face..." (N.T. 7/26/11, p. 19). Defendant

---

[3]     When the complainant's father gave his victim impact statement, he commented that "[i]f [defendant] wants to fight, he's 18. Go join the military. ... There are much better things he could be doing (N.T. 7/26/11, p. 14).

[4]     This court noted that defendant's "girlfriend" on October 30, 2010, at the scene of the crime was not Chelcie M. Davies, with whom he was living and expecting a child at the time. Ms. Davies wrote a letter to the court on defendant's behalf for sentencing asking that he come home to be a father to the children. Defendant's *pro se* letter to the court in January professed that he wanted to get home because he missed his fiancé, stepdaughter, and child on the way. *See Defendant's Pro Se Letter*, dated Jan. 28, 2011. Defendant's simultaneous relationship with his "girlfriend" and fiancé is further proof of his deceitful character.

8

doesn't care about the victim unless his attorney is telling him to mention words such as "remorse" and "sorry" (id. 19-20).

Defendant has assaulted people 3 times as a juvenile and 2 times as an adult (N.T. 7/26/11, p. 21). It is apparent that defendant enjoys beating people up (id. at 21). Defendant is not at all sorry for what he did and is a danger to society (id. at 20-21).[5]

---

[5]     This court considered other information contained in defendant's Presentence Report: defendant's biological father was incarcerated most of his life; defendant has a brother and five half-siblings; defendant has lived with his mother, stepfather and siblings since the age of 2; defendant claimed that his grandmother made a "fabricated" claim to the Department of Human Services that his mother was neglecting and abusing her children, which was dismissed on February 9, 1998; defendant had eight arrests as a juvenile resulting in four adjudications of delinquency; he was also on juvenile probation for an arrest that occurred on May 14, 2010; defendant attended school in the Youth Detention Center, New Castle, and earned two A's, 2 B's, and 2 C's; defendant last attended school at Ombudsman High School, but withdrew in the 12th grade; defendant said he went to Ombudsman because it specialized in educating kids with ADHD [sic]; subject had no difficulty reading; he worked with his stepfather in his carpentry business from the time he was 12 until he was incarcerated; he has $2,000.00, in traffic violations; defendant stated that he was treated for bipolar disorder and depression at YDC New Castle when he was 14 years-old—he was prescribed Seroquel and "he felt the medication was helping"; defendant reported having serious anger management issues; defendant stated that "alcohol abuse has been a problem for him," in that, he "drink[s] to the point of intoxication on a regular basis"; and he stated he was intoxicated at the time of the underlying offense. This court believed that defendant may be able to be rehabilitated, but not any time soon (N.T. 7/26/11, p. 21). As part of his sentence, this court recommended that defendant go to vocational programs in the state corrections facility and come out and stop attacking people (id. at 22).

The 6 foot 3 inch, 180 pound, boxer defendant is the person that every parent fears when their kid leaves home—a criminal who will inflict injury on their young son or daughter for no valid reason whatever. He has already inflicted serious bodily injury on a minor. This despite no indication of educational or family problems.

Based on all of the above, this court's sentence of 48 months incarceration to 186 months incarceration was a generous guideline sentence within the standard range (N.T. 7/26/11, p. 22, 24, 27).[6]

This court:

> …[weighed] the aggravated factors which are numerous. And I balanced that against the mitigating factor of [defendant] pleading guilty. And I am framing this sentence to protect the public from you for at least four years. These assaults have to stop .

(N.T. 7/26/11, p. 22)(emphasis added).

There was no abuse of discretion in framing the above appropriate sentence. *See Berry, supra,* at 997-998 (where the court had reviewed the presentence investigation in open court, considered the age and frail condition of the victim an aggravating factor, considered appellant's prior extended treatment in the juvenile system and his quick return to criminal conduct once released from the juvenile system, considered appellant uncooperative with treatment, dangerous,

---

[6]    Also, the maximum sentence is not excessive or manifestly unreasonable where it substantially exceeds the minimum when "the trial court determine[s] that [a]ppellant [is] in need of long term counseling and state supervision." *See Commonwealth v. Lee,* 876 A.2d 408, 413-414 (2005).

and aggressive, with no desire to control himself and with above average intelligence, reviewing court stated, "even if appellant were entitled to review on the merits, we would find no abuse of discretion").

## Conclusion

Defendant's claim is not entitled to review by the Court. Defendant's sentence should stand.

BY THE COURT:

CHRIS R. WOGAN, J.

11