J-S89031-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: D.T.M., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.M., MOTHER | No. 1303 EDA 2016 |

Appeal from the Order March 24, 2016
in the Court of Common Pleas of Philadelphia County Family Court
at No(s): CP-51-AP-0000331-2015
CP-51-DP-0000333-2010

BEFORE: SHOGAN, MOULTON, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED January 12, 2017**

D.M. ("Mother") appeals from the order entered in the Philadelphia County Court of Common Pleas terminating her parental rights to D.T.M. ("Child") (born in 2005). Mother contends the Department of Human Services ("DHS") failed to establish the elements of 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). We affirm.

We adopt the facts as set forth by the trial court. **See** Trial Ct. Op., 5/27/16, at 1-4.[1] DHS filed a petition to involuntarily terminate Mother's

---

[*] Former Justice specially assigned to the Superior Court.

[1] We note that Dr. William Russell testified at the October 15, 2015 hearing. Mother's counsel stipulated that Dr. Russell was an expert in the field of parenting capacity evaluations. N.T., 10/15/15, at 20. Dr. Russell provided DHS with a parenting capacity evaluation for Mother and a bonding evaluation. **Id.** He testified that he followed "the APA standards set forth for forensic psychologists[.]" **Id.** at 42. Jessica Merson testified that she was a child abuse investigator for DHS. **Id.** at 80. Shereena Johnson of DHS was assigned to Child's case. N.T., 11/2/15, at 10. Stephanie Reily was the case manager from the Wordsworth Community Umbrella Agency ("CUA"). N.T., 1/8/16, at 4.

parental rights. Hearings were held on October 15, 2015, November 2, 2015, and January 8, 2016. The trial court changed the goal from reunification to adoption and terminated Mother's parental rights to Child pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8) and (b). **See** Order, 3/24/16. Mother simultaneously filed a timely notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), and the trial court filed a responsive opinion.

Mother raises the following issues for our review:

> 1. Did [DHS] sustain their burden that Mother's rights should be terminated when there was evidence that Mother had completed and/or had been actively completing her permanency goals?

> 2. Was there sufficient evidence presented to establish that it was in the best interest of [C]hild to terminate Mother's parental rights?

Mother's Brief at 4.[2]

We review appeals from the involuntary termination of parental rights according to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility

---

[2] Appellant raised eight issues in her Pa.R.A.P. 1925(b) statement of errors complained of on appeal. **See Commonwealth v. Dunphy**, 20 A.3d 1215, 1218 n. 2 (Pa. Super. 2011) (holding claims raised in Rule 1925(b) statement but not identified in statement of questions presented or developed in argument section of brief abandoned on appeal).

determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

[T]here are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012) (citations omitted).

A trial court's decision regarding the termination of parental rights is controlled by Section 2511 of the Adoption Act, which requires a bifurcated analysis:

Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination

of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S. § 2511)

(some citations omitted).

Section 2511(a) provides in pertinent part:

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a

reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

25 Pa.C.S. § 2511(a)(1), (2), (5), (8), (b). "We note that, initially, the focus in terminating parental rights is on the parent, under Section 2511(a), whereas the focus in Section 2511(b) is on the child." ***In re C.L.G.***, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*) (citation omitted).

In termination cases, the burden is upon DHS to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid.

We have previously stated:

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

*In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (citation omitted).

In the case at bar, the trial court found that the facts alleged in DHS's petition as to subsections 2511(a)(1), (2), (5), (8) and (b) were established by clear and convincing evidence. Trial Ct. Op., 7/12/13, at 3-11. In *In re B.L.W.*, 843 A.2d 380 (Pa. Super. 2004) (*en banc*), this Court opined: "While the trial court found that [DHS] met its burden of proof under each section quoted above, we need only agree with its decision as to any one subsection in order to affirm the termination of parental rights." *Id.* at 384 (citations omitted). We consider whether the trial court erred in terminating Mother's parental rights under Section 2511(a)(8).

> We have explained this Court's review of a challenge to the sufficiency of the evidence to support the involuntary termination of a parent's rights pursuant to § 2511(a)(8), as follows:

> In order to terminate parental rights pursuant to 23 [Pa.C.S.] § 2511(a)(8), the following factors must be demonstrated: (1) The child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child.

- 6 -

> *In Re Adoption of M.E.P.*, 825 A.2d 1266, 1275–1276
> (Pa. Super. 2003). . . . "**Notably, termination under
> Section 2511(a)(8), does not require an evaluation
> of Mother's willingness or ability to remedy the
> conditions that led to placement of her children**." *Id.*
> at 511.

*In re K.M.*, 53 A.3d 781, 789 (Pa. Super. 2012) (emphasis added).

We have observed the following about the "needs and welfare"

analysis pertinent to Sections 2511(a)(8) and (b):

> [I]nitially, the focus in terminating parental rights is on the
> parent, under Section 2511(a), whereas the focus in
> Section 2511(b) is on the child. However, Section
> 2511(a)(8) explicitly requires an evaluation of the "needs
> and welfare of the child" prior to proceeding to Section
> 2511(b), which focuses on the "developmental, physical
> and emotional needs and welfare of the child." Thus, the
> analysis under Section 2511(a)(8) accounts for the needs
> of the child in addition to the behavior of the parent.
> Moreover, only if a court determines that the parent's
> conduct warrants termination of his or her parental rights,
> pursuant to Section 2511(a), does a court "engage in the
> second part of the analysis pursuant to Section 2511(b):
> determination of the needs and welfare of the child under
> the standard of best interests of the child." Accordingly,
> while both Section 2511(a)(8) and Section 2511(b) direct
> us to evaluate the "needs and welfare of the child," we are
> required to resolve the analysis relative to Section
> 2511(a)(8), prior to addressing the "needs and welfare" of
> [the child], as proscribed by Section 2511(b); as such,
> they are distinct in that we must address Section 2511(a)
> before reaching Section 2511(b).

*In re C.L.G.*, 956 A.2d at 1008-09 (Pa. Super. 2008).

Mother contends the trial court erred in terminating her parental rights

pursuant to Section 2511(a)(8). "Ms. Riley's extensive testimony that there

were no barriers to reunification clearly established that the conditions which

led to the removal or placement of [C]hild were no longer present."

Appellant's Brief at 18.

In the case *sub judice*, the trial court opined:

> Child in this case has been in DHS custody since March 22, 2012, for a total of four years. Child was removed because Mother was a safety threat to Child's life. Mother abused drugs and physically abused Child. Child has chronic respiratory problems which were made worse by Mother's failure to attend doctor's appointments. Mother has not acknowledged and accepted her role in endangering Child's life. Mother has not attended Child's medical appointments, despite court orders. Mother is not involved in Child's schooling—Mother does not attend school meetings. Mother spends all the time at her visits talking with Child about school, but does not know where Child attends school or goes to therapy. Mother has attended most court hearings. Mother has not attended visits with Child in over three weeks because she had become upset with CUA. The court heard credible testimony from Dr. Russell that Mother would not be able to parent safely for a year or more. Mother has not successfully completed her drug and alcohol program. Child is currently placed in a safe and stable pre-adoptive home. Foster Mother provides for all Child's needs, and has a loving bond with Child. The DHS social worker testified that it would be in Child's best interest to terminate Mother's parental rights and allow Foster Mother to adopt Child. Child refers to Foster Mother as "grandmom" and in the past expressed a desire to remain with Foster Mother. Child needs permanency. The conditions leading to removal continue to exist, as Mother is not able to acknowledge her role in child's life-threatening medical issues. The testimony of DHS's witness was unwavering and credible. Mother is not ready, willing or able as of today to parent [Child].

Trial Ct. Op. at 11 (citations omitted). We discern no abuse of discretion in

the trial court's determination that termination of parental rights pursuant to

Section 2511(a)(8) would best serve the needs and welfare of Child. **See In**

*re S.P.*, 47 A.3d at 826-27. We defer to the trial judge's credibility determinations. *See id.* The totality of the circumstances warrants termination pursuant to Section 2511(a)(8). *See In re K.M.*, 53 A.3d at 789; *In re R.N.J.*, 985 A.2d at 276.

We now consider the needs and welfare of Child as required by section 2511(b). *See In re C.L.G.*, 956 A.2d at 1008-09. Mother argues the trial court erred in its conclusion pursuant to Section 2511(b), relying upon the testimony of Ms. Reily, the CUA case manager. Appellant's Brief at 20-21.

With regard to subsection 2511(b), this Court has stated:

> The trial court also must discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. The extent of the bond-effect analysis necessarily depends upon the unique facts and circumstances of the particular case.
>
> * * *
>
> Moreover, the mere existence of an emotional bond does not preclude the termination of parental rights. . . .
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re K.M.*, 53 A.3d at 791 (citations omitted).

> [C]oncluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is

- 9 -

not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent . . . Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and its mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (citations and quotation marks omitted).

Thus, the court may emphasize the safety needs of the child. *See In re K.Z.S.*, 946 A.2d 753, 763-64 (Pa. Super. 2008) (affirming the involuntary termination of the mother's parental rights, despite the existence of some bond, where placement with the mother would be contrary to the child's best interests, and any bond with the mother would be fairly attenuated when the child was separated from her, almost constantly, for four years).

It is well-settled that "we will not toll the well-being and permanency of [a child] indefinitely." *In re C.L.G.*, 956 A.2d at 1007 (citing *In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008) (noting that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting")).

The trial court determined that the facts of this case supported a finding that termination would best serve Child's needs and welfare. The court opined:

> Dr. Russell, who performed a bonding evaluation on Mother and Child, testified that they have a definite bond, but not a parental one. Mother has not been the primary caretaker in Child's life for over three and a half years. More recently, Mother has not visited with Child in three weeks because she was upset with CUA. Child has developed a resilient and independent personality as a result, and Dr. Russell testified that Child would not suffer any irreparable harm if Mother's parental rights were terminated. Child has displayed fear of returning to Mother's care, and did not want to reunify with her. Mother has not acknowledged Child's past medical neglect or the part Mother played in allowing Child's condition to worsen to life–threatening levels. Child has a strong, loving bond with Foster Mother, who seeks to adopt Child. Foster Mother provides for all of Child's needs, including her extensive medical needs. Child refers to Foster Mother as "grandmom" and in the past expressed a desire to remain with Foster Mother. It would be in Child's best interest to be adopted by foster Mother.

Trial Ct. Op. at 12.

After a careful review, we find the record supports the trial court's factual findings, and the court's conclusions are not the result of an error of law or an abuse of discretion with regard to Section 2511(b). *See In re S.P.*, 47 A.3d at 826-27. We defer to the trial court's credibility determinations. *See id.*; *see also In re K.Z.S.*, 946 A.2d at 763-64. We, therefore, affirm the order terminating Mother's parental rights with regard to Child under Sections 2511(a)(8) and (b).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/12/2017