J-A31045-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TOYA EDWARD STUMP, SR., | |
| Appellant | No. 794 MDA 2015 |

Appeal from the Judgment of Sentence March 16, 2015
in the Court of Common Pleas of Dauphin County
Criminal Division at No.: CP-22-CR-0002227-2014

BEFORE:  PANELLA, J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED JANUARY 20, 2016**

Appellant, Toya Edward Stump, Sr., appeals from the judgment of sentence imposed following his jury conviction of one count of failure to register with the Pennsylvania State Police pursuant to Megan's Law.[1] Appellant challenges the weight of the evidence to support his conviction and the discretionary aspects of his sentence.  We affirm.

The trial court aptly summarized the facts of this case as follows:

> Appellant, Toya Stump, is classified as a Tier II sex offender who must comply with the attendant statutory registration and reporting requirements.  The Commonwealth charged him with failing to comply with the registration and reporting requirements in January 2014.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 4915.1(a)(1);  **see also** 42 Pa.C.S.A. §§ 9791-9799.

In support of its case, the Commonwealth presented the testimony of Pennsylvania State Trooper Tandy Carey ("Tpr. Carey") whose job responsibilities include acting as [a] Megan's Law liaison. At trial, Tpr. Carey explained the initial registration process, the continuing reporting requirements and the investigatory process if an individual does not comply with the statutory registration and reporting requirements.

[Appellant's] full Megan's Law registration packet was admitted into evidence at trial. Upon review of the packet, Tpr. Carey testified that the document memorializes ". . . essentially everything for a person [who] is a registrant with Megan's Law from day one . . . [including] any investigat[ion] reports that are sent out . . . [and] every registration form that the registrant has signed within the time that he or she has been on Megan's Law."

According to the statute, [Appellant] is required to register two times per year for [twenty-five] years. Tpr. Carey outlined the signed and completed registrations and some of the specific information provided at the registrations beginning with [Appellant's] initial registration following his release from incarceration[.] . . .

The Megan's Law registration packet includes a document that was signed by [Appellant] on July 7, 2012, which outlined all of his registration requirements and listed approved registration locations. The packet included a December 30, 2013 letter addressed to [Appellant] which gave notice of the [ten] day timeframe in which he was required to appear for a timely registration. Tpr. Carey explained that the letter was addressed to 322 Second Street, Highspire, PA, 17034, but was returned as undeliverable. Tpr. Carey testified that a registrant is required to comply even if the reminder letter is not received. According to the packet, as of January 24, 2014, [Appellant] had not registered; therefore, an investigation request was sent by letter indicating a possible violation which required further exploration.

Officer Jeffrey S. LeVan ("Officer LeVan") of the Highspire Borough Police ("HBPD") Department was assigned to investigate the possible Megan's Law registration violation involving [Appellant]. Officer LeVan commenced his investigation on January 22, 2014 by contacting the Megan's Law Unit at the [Pennsylvania State Police] to be sure no further

information on re-registration had been submitted; none had been submitted. LeVan and a HBPD detective proceeded to [Appellant's] last known address—322 Second Street in Highspire. [Appellant] was not found at that location so Officer LeVan moved on to the Highspire post office where he discovered a change of address form indicating that [Appellant] had relocated to 310 North Third Street in Harrisburg as of January 27, 2014. According to Carol Meyers, ("Ms. Meyers"), the postmaster of the Highspire U.S. Post Office, the change of address form was completed on August 21, 2013 and was valid until February 22, 2014. Ms. Meyers testified that the submission of a change of address form indicated the date on which an individual wants his or her mail forwarded to a different address.

Officer LeVan conducted a search on the J-Net database using [Appellant's] driver's license number. The search revealed that the license was still registered to 322 Second Street in Highspire. Officer LeVan made two trips to the 322 Second Street location on[e] of which included a conversation with the landlord but, he was unable to locate [Appellant].

William Eric Stoermer ("Officer Stoermer"), a Major Deputy Chief of Police at the Naval Support Activity Center in Mechanicsburg, Pennsylvania testified that he recalled encountering [Appellant] while employed at the Naval [C]enter. Officer Stoermer stated that on November 26, 2013, while on duty, he was involved in the termination of [Appellant's] employment. Officer Stoermer emphasized that when a person is terminated from employment at the Naval Center, he is no longer permitted on the premises and, if [Appellant] indicated on a form that he had been employed after November 26, 2013, it would be inaccurate.[2]

[Appellant] called George Navarro ("Mr. Navarro"), his father, as a witness. Mr. Navarro testified that when [Appellant] was released from prison, he lived with him at his 322 Second Street apartment in Highspire. Mr. Navarro was aware of [Appellant's] registration requirements. Mr. Navarro stated that

---

[2] Appellant reported employment at the naval base in March 2014, after he was terminated. (*See* N.T. Trial, 3/09/15, at 33-34).

he had taken [Appellant] to register three times, starting in summer of 2012, to [two different registration locations]. Mr. Navarro [testified] to his belief that a woman named Treva [Harris] had taken [Appellant] to register on one occasion. In January 2013, Mr. Navarro moved from the 322 Second Street apartment at which time [Appellant] moved out and began living in a garage in Harrisburg.

[Appellant] also testified on his own behalf. His testimony confirmed that Mr. Navarro had taken him to register three times and that Ms. Harris had taken him once. [Appellant] also confirmed that after he moved out of the apartment with Mr. Navarro, he was homeless for a short time and then relocated to a garage on Logan Alley in Harrisburg for the winter. A lease agreement for the garage space dated January 11, 2013, was admitted at trial.

[Appellant] testified that on two occasions he had registered at the Gibson Boulevard location in addition to the trips with Mr. Navarro and Ms. Harris. [Appellant] stated that he understood when and how he had to register but, he had no explanation about why there was no January 2014 registration in the Megan's Law Packet. The only explanation he could offer was an error in the [police] records. Additionally, [Appellant] acknowledged that he was required to report his change of address and change of employment status and claimed that he registered with the [police] within three days of moving.

(Trial Court Opinion, 9/10/15, at 2-6) (footnotes and record citations omitted).

On March 11, 2015, the jury found Appellant guilty of the above-mentioned offense.[3] On March 16, 2015, the trial court sentenced Appellant to a term of not less than thirty-three nor more than seventy-two months'

_____

[3] Appellant waived preparation of a pre-sentence investigation report (PSI) and elected to submit background materials to the court in advance of sentencing. (*See* N.T. Trial, 3/11/15, at 124).

incarceration. The court denied Appellant's timely post-sentence motion on April 7, 2015. This timely appeal followed.[4]

Appellant raises two issues for our review:

I. Whether the trial court erred in denying Appellant's post-sentence motion where his conviction was against the weight of the evidence so as to shock one's sense of justice where Appellant was never shown to have engaged in acts which constitute the offense of which he was convicted?

II. Whether the trial court erred in denying Appellant's post-sentence motion where his sentence was excessive and unreasonable and constitutes too severe a punishment in light of the alleged gravity of the offense, Appellant's medical and rehabilitative needs, and what is needed to protect the public?

(Appellant's Brief, at 6) (underline and some capitalization omitted).

In his first issue, Appellant challenges the weight of the evidence to support his failure to register conviction. (*See* Appellant's Brief, at 14-15).[5] Appellant argues his trial testimony established that he updated his registration information in January 2014, and that he informed police of his address change within three days of his move. (*See id.* at 15). This issue does not merit relief.

_____

[4] Pursuant to the trial court's order, Appellant filed a timely concise statement of errors complained of on appeal on May 26, 2015. *See* Pa.R.A.P. 1925(b). The court filed an opinion on September 10, 2015. *See* Pa.R.A.P. 1925(a).

[5] Appellant preserved his weight claim by raising it in his post-sentence motion. *See* Pa.R.Crim.P. 607(A)(3); (*see also* Post-Sentence Motion, 3/17/15, at unnumbered page 2).

The law pertaining to weight of the evidence claims is well-settled. The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal with all the facts is to deny justice.

On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. An appellate court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 723 (Pa. Super. 2015), *appeal denied*, 2015 WL 5726427 (Pa. filed Sept. 29, 2015) (citations and quotation marks omitted).

Here, the testimony at trial makes clear that Appellant was well aware of the registration and reporting requirements and of how to comply with them, and that he, in fact, did comply with them on several occasions. (*See* N.T. Trial, 3/09/15, at 25, 28-30, 43; N.T. Trial, 3/11/15, at 71, 86-88, 94-95). However, there was no registration information for Appellant in police records for the January 2014 reporting period, and, as a result, police initiated an investigation and were unable to locate him. (*See* N.T. Trial,

3/09/15, 30-32, 47-49).[6]  The evidence also reflected that Appellant failed to report an address change in January 2013, and that he continued to report employment at the naval base after his employer terminated him. (*See id.* at 33-34; N.T. Trial, 3/11/15, at 67-68, 98-99).  Although Appellant testified that he did register and report the address change, and attributed lack of documentation of this to an error in police records, (*see* N.T. Trial, 3/11/15, at 93-94, 98-99), the jury, as finder of fact, while passing upon the credibility of witnesses' testimony, was free to believe all, part, or none of the evidence. *See Gonzalez*, *supra* at 723.  After review of the record, and mindful of our "extremely limited" purview, we cannot conclude that the trial court's ruling on Appellant's weight of the evidence claim constituted an abuse of discretion. *Id.*  Therefore, Appellant's first issue does not merit relief.

In his second issue, Appellant argues that the sentence is excessive because the court failed to consider mitigating factors such as: his age of fifty-six; the fact that he fractured three vertebrae in 2013 and has been participating in outpatient physical therapy ever since; and his expression of

_____

[6] Appellant's whereabouts remained unknown to police until he was arrested in March 2014 on an unrelated simple assault charge.  (*See* N.T. Sentencing, 3/16/15 at 7; Trial Ct. Op., at 3 n.3).

remorse to the court. (**See** Appellant's Brief, at 12, 17-18).[7] This issue does not merit relief.

At the outset, we observe that Appellant's issue challenges the discretionary aspects of his sentence. However, "[t]he right to appeal the discretionary aspects of a sentence is not absolute." **Commonwealth v. Dunphy**, 20 A.3d 1215, 1220 (Pa. Super. 2011) (citation omitted).

> Before we reach the merits of this [issue], we must engage in a four part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence [, **see** Pa.R.A.P. 2119(f)]; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. . . . [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

**Commonwealth v. Edwards**, 71 A.3d 323, 329-30 (Pa. Super. 2013), *appeal denied*, 81 A.3d 75 (Pa. 2013) (citation omitted).

In the instant case, Appellant timely appealed, preserved his claim in the trial court, and included a Rule 2119(f) statement in his brief. **See id.** With respect to the substantial question requirement:

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exits only when the appellant advances a colorable argument that the sentencing judge's actions were

---

[7] Appellant's claim that he expressed remorse to the court, (**see** Appellant's Brief, at 12, 18), is not supported by the record, which does not reflect any such expression. (**See** N.T. Sentencing, 3/16/15, at 5-6; Trial Ct. Op., at 11).

either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Commonwealth v. Austin*, 66 A.3d 798, 808 (Pa. Super. 2013), *appeal denied*, 77 A.3d 1258 (Pa. 2013) (citations and quotation marks omitted). "[T]his Court has held that an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question." *Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014), *appeal denied*, 105 A.3d 736 (Pa. 2014) (citation omitted). Therefore, we will review Appellant's claim on the merits.

Our standard of review in sentencing matters is well-settled:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will.

*Commonwealth v. Clarke*, 70 A.3d 1281, 1287 (Pa. Super. 2013), *appeal denied*, 85 A.3d 481 (Pa. 2014) (citation omitted).

In fashioning a defendant's sentence, the court must "follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b).

- 9 -

Here, at the sentencing hearing, defense counsel discussed various mitigating factors including Appellant's age, his family support, and his medical injury requiring physical therapy. (*See* N.T. Sentencing, 3/16/15, at 4). Appellant emphasized his need for physical therapy, and explained that he was terminated from his employment because of his prior record, and not because of any misconduct. (*See id.* at 5-6). The Commonwealth stated that Appellant's registration and reporting violations were blatant from the record, and noted that, despite Appellant's claim of poor physical health, he was arrested in March of 2014 for simple assault for allegedly beating his girlfriend. (*See id.* at 7). Before imposing its sentence, which is in the standard guideline range, the court explained its rationale as follows:

> [Appellant], your conduct in this case was on the egregious side, pretty serious. There were obvious violations of the reporting statute and as [the Commonwealth] correctly pointed out, once we got into the testimony, it became a little more obvious that you were skirting your obligations.
>
> I should say that the jury had no issue at all. They came back with a very quick verdict based on the testimony. So I think the Commonwealth's case was clearly established. . . .

(*Id.* at 8).

Thus, the record reflects that the court was fully aware of the mitigating factors in this case, and that it took into account relevant factors in formulating its sentence. Accordingly, we conclude that the trial court did not abuse its discretion in imposing Appellant's sentence. *See Clarke*, *supra* at 1287. Appellant's second issue lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/20/2016