J-S29007-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EDWARD R. DUNPHY | : | |
| | : | |
| Appellant | : | No. 3483 EDA 2016 |

Appeal from the PCRA Order Entered September 26, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0010374-2008

BEFORE: PANELLA, J., MURRAY, J., and STEVENS*, P.J.E.

MEMORANDUM BY PANELLA, J. **FILED OCTOBER 01, 2018**

Edward R. Dunphy challenges the order entered in the Philadelphia County Court of Common Pleas, dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. A prior panel of this Court remanded for an evidentiary hearing, based on counsel's purported ineffectiveness. **See Commonwealth v. Dunphy**, No. 35 EDA 2013 (Pa. Super., filed March 5, 2015) (unpublished memorandum). Following that hearing, we affirm.

The panel on direct appeal set forth the relevant facts and procedural history as follows:

On June 7, 2008, at approximately midnight, Appellant was driving his vehicle while intoxicated, striking and killing a 20 year old pedestrian, Hannah Cintron, as she was crossing the northbound lanes of Delaware Avenue, a six-lane divided highway with a speed limit of 35 miles per hour. Cintron suffered multiple, severe blunt impact injuries to her head, torso, and legs,

_____

* Former Justice specially assigned to the Superior Court.

sustaining a fractured hip, a fractured rib, a broken back and a ruptured aorta. Cintron was pronounced dead at the scene. As a result, Appellant was arrested and charged with murder in the third degree, 18 Pa.C.S.A. § 2502(c); involuntary manslaughter, 18 Pa.C.S.A. § 2504(a); homicide by vehicle, 75 Pa.C.S.A. § 3732; homicide by vehicle while driving under the influence, 75 Pa.C.S.A. § 3735(a); accident involving death or personal injury, 75 Pa.C.S.A. § 3742; and driving under the influence of alcohol, 75 Pa.C.S.A. § 3802(a)(1).

On July 14, 2009, Appellant proceeded to a trial before a jury. At trial, Dennis Wright, a valet employed at Roxxy nightclub in the 900 block of North Delaware Avenue, testified that, shortly after midnight on June 7, 2008, he heard the sound of a truck suddenly accelerating. He looked towards the sound, and observed Appellant driving north on Delaware Avenue at approximately 60 miles per hour. He also observed the victim, Hannah Cintron, walking across the northbound lanes of Delaware Avenue, in the lane closest to the median strip. Wright witnessed Appellant's truck slam into Cintron, causing her to fly into the air, land on the hood of his truck, fly off the truck, and then land on the street. Wright testified that, after the impact, Appellant's truck braked briefly, swerved into the middle lane, and then sped away at an even greater speed, without ever coming to a complete stop.

Joseph Stickel, who, at the time of the accident, was standing on the median strip separating Delaware Avenue, testified that he witnessed Appellant's truck come around the corner, hit Cintron, and then keep going. Stickel stated that he heard "someone slamming on their brakes, and [he] looked up and [Cintron] got hit." Based on Appellant's truck hitting Cintron, Stickel observed Cintron's body fly down the road and over the truck, and then land in the middle of the road.

After Appellant's truck hit Cintron, Robert DeGuzman, who was working a security detail at Roxxy nightclub, entered his vehicle in an attempt to locate the person who hit Cintron. When he reached Interstate 95, he came upon Appellant's truck, which matched the description of the truck that hit Cintron, and he began to follow it. DeGuzman testified that Appellant was swerving through traffic. When Appellant stopped at a house at the corner of Madison and Tilton Streets, DeGuzman ordered Appellant out of the truck and handcuffed him. DeGuzman stated that Appellant smelled strongly of alcohol, and Appellant said, "I'm

sorry, I didn't mean to do it. I'm drunk." DeGuzman observed that Appellant's truck was damaged on the driver's side, including the windshield, which was "squashed all the way down."

Officer Michael DeRose arrived at Madison and Tilton Streets after DeGuzman had stopped Appellant. DeRose testified that, when he arrested Appellant, he noticed a very strong odor of alcohol on Appellant. Further, he stated that Appellant "kept saying over and over and over again that he was sorry."

After Appellant was arrested, Officer Robert Reppert interviewed him. Reppert testified that Appellant consented to a blood test, which was performed at 1:40 a.m. He further testified that he questioned Appellant about the incident and that, Appellant stated that he had been at McFadden's Bar and had consumed "several shots and several beers" over the course of two or three hours. Appellant further stated to Reppert that he then got into his truck and headed to his cousin's house because he "didn't think [he] could make it home." Appellant told Reppert that, as he was driving on Delaware Avenue, he saw pedestrians crossing the street approximately 50 to 100 yards in front of him, but he accelerated to "make the next light." When asked if he struck any people with his truck, Appellant stated, "Not to my knowledge, no, sir." Appellant admitted to Reppert that his truck had not been damaged earlier in the evening.

Richard D. Cohn, Ph.D., testified as an expert for the Commonwealth in the areas of pharmacology and forensic toxicology. Cohn testified that Appellant's blood alcohol content was .183% at the time his blood was drawn. Cohn concluded that Appellant would have consumed a minimum of ten or eleven drinks for his blood alcohol to be .183% at the time his blood was drawn. Cohn further testified that, in his opinion, Appellant was incapable of safely operating a vehicle.

Officer William Lackman of the Philadelphia Police Department's Accident Investigation Division testified as an expert on accident reconstruction on behalf of the Commonwealth. Lackman testified that Citron's body came to rest about 178 feet north of where she was originally hit by Appellant's truck, and that she was either airborne or on the hood of the truck for 135 feet. Lackman stated that the Airbag Control Module of Appellant's truck confirmed that he was traveling between 59 and 60 miles an hour when he hit Cintron, and that Cintron was traveling approximately 50 miles

per hour when she flew off the hood of the truck. Lackman further stated that there were skid marks at the scene, which indicated that Appellant applied his brakes after striking Cintron, but never came to a complete stop. Lackman concluded that Appellant's truck striking Cintron caused her death.

On July 15, 2009, after the parties presented their evidence and arguments to the jury, Appellant pleaded guilty to driving under the influence of alcohol ["DUI"] and accident involving death or personal injury. The jury subsequently found Appellant guilty of third degree murder. On September 16, 2009, the trial court sentenced Appellant to seven to fourteen years' imprisonment for third degree murder; a consecutive term of one to two years' imprisonment for accident involving death or personal injury; and [six] months' probation for driving under the influence of alcohol, to be served concurrently with his other sentences.

***Commonwealth v. Dunphy***, 20 A.3d 1215, 1216-1218 (Pa. Super. 2011) (internal citations and footnote omitted).

This Court affirmed Appellant's judgment of sentence. Appellant did not appeal that determination. Instead, he filed a timely PCRA petition challenging trial counsel's effectiveness. Following argument, the PCRA court issued an order dismissing the petition. Appellant appealed. And "out of an abundance of caution" "[g]iven the unique set of facts and trial counsel's strategy … and the absence of any PCRA court opinion," the panel remanded for another evidentiary hearing so that trial counsel could testify. ***Dunphy***, No. 35 EDA 2013, at 11.

At that hearing, Appellant's trial counsel testified that he and Appellant discussed strategy many times before the trial. ***See*** N.T., Hearing, 7/8/16, at 115. According to counsel, both agreed a reasonable jury would feel certain Appellant's intoxication was highly relevant to causation of the accident. ***See***

- 4 -

*id*., at 122. They settled on a strategy where counsel would admit Appellant was guilty of homicide by DUI, but attempt to use his impairment to negate the malice element of third-degree murder. *See id*., at 118. Thus, in his opening statement, counsel stated Appellant was guilty of homicide by vehicle due to intoxication, but not of third-degree murder. *See id*., at 97.

However, counsel testified that midway through trial, Appellant insisted on changing the defense strategy. *See id*., at 104. Counsel attempted to persuade Appellant this would damage the credibility of the defense, but Appellant was adamant. *See id*., at 124. Despite admitting Appellant's intoxication during his opening statement, counsel asked the court if he could retract the admission that Appellant was guilty of homicide by DUI. *See id*., at 128. Counsel instead argued that Appellant's rate of speed, and not his intoxication, caused the accident. *See id*., at 139.

Appellant also testified at the evidentiary hearing. He claimed counsel never mentioned he would be admitting Appellant's guilt of homicide by DUI in his opening statement. *See* N.T., Hearing, 9/23/16, at 40. Appellant denied the admission was part of any agreed-upon strategy. *See id*., at 41. Appellant conceded the court conducted a plea colloquy after counsel indicated he wished to retract the statement. *See id*., at 61. And Appellant willingly pled guilty to DUI and accident involving death or personal injury. *See id*., at 58. Yet, Appellant insisted during the evidentiary hearing he was unaware he could have challenged counsel's conduct at the time. *See id*., at 65.

At the close of the hearing, the PCRA court found trial counsel's testimony credible. The court concluded his trial strategy was reasonably based on promoting Appellant's best interests, and again dismissed Appellant's petition.

On appeal, Appellant challenges trial counsel's effectiveness. He argues that counsel executed a mid-trial change in strategy that dashed Appellant's chances of success. Appellant asserts the change in strategy was due to counsel's lack of preparation, and that we should remand for a new trial in light of counsel's obvious ineffectiveness.

"On appeal from the denial of PCRA relief, our standard and scope of review is limited to determining whether the PCRA court's findings are supported by the record and without legal error." ***Commonwealth v. Edmiston***, 65 A.3d 339, 345 (Pa. 2013) (citation omitted). On questions of law, our scope of review is *de novo*. ***See id***. "We are bound by any credibility determinations made by the PCRA court where they are supported by the record." ***Commonwealth v. Staton***, 184 A.3d 949, 954 (Pa. 2018) (citation omitted).

We presume counsel's effectiveness, and an appellant bears the burden of proving otherwise. ***See Commonwealth v. Brown***, 161 A.3d 960, 965 (Pa. Super. 2017). To establish ineffectiveness of counsel, a PCRA petitioner must plead and prove: his underlying legal claim has arguable merit; counsel's actions lacked any reasonable basis; and counsel's actions prejudiced the petitioner. ***See Commonwealth v. Spotz***, 18 A.3d 244, 260 (Pa. 2011).

Failure to satisfy any prong of the ineffectiveness test requires dismissal of the claim. *See Commonwealth v. O'Bidos*, 849 A.2d 243, 249 (Pa. Super. 2004).

"We will conclude that counsel's chosen strategy lacked a reasonable basis only if Appellant proves that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Commonwealth v. Chmiel*, 30 A.3d 1111, 1127 (Pa. 2011) (citation and internal quotations omitted).

Here, the testimony, as found credible by the PCRA court, demonstrated Appellant and trial counsel met several times before trial, and agreed intoxication was the cause of the accident. Counsel then devised a strategy where he would concede Appellant's guilt on the lesser charge of homicide by DUI, in hopes of avoiding the more serious charge of third-degree murder. Appellant pled guilty to DUI and leaving the scene of the accident, and assured the court he was satisfied with counsel's services.

Appellant's insistence that counsel modify the agreed-upon strategy mid-trial, by withdrawing the admission that Appellant was guilty of homicide by DUI, cannot now form the basis for finding counsel acted unreasonably. Counsel's strategy was reasonably designed to effectuate Appellant's interests. Thus, Appellant has failed to satisfy the reasonable basis prong of the ineffectiveness test. Accordingly, we affirm the order dismissing Appellant's petition for PCRA relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/1/18