J-A26045-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| M.S. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| S.S. | : | |
| | : | |
| Appellant | : | |
| | : | |
| | : | No. 934 WDA 2019 |

Appeal from the Order Entered May 28, 2019
In the Court of Common Pleas of Lawrence County Family Court at
No(s): 10041 of 2016 C.A.

BEFORE: SHOGAN, J., LAZARUS, J., and OLSON, J.

MEMORANDUM BY OLSON, J.:                    **FILED DECEMBER 12, 2019**

Appellant, S.S. ("Mother"), appeals from the order entered on May 28, 2019, modifying custody with M.S. ("Father") regarding the parties' two children, A.F.S. (a female born in October 2003) ("Daughter") and A.M.S. (a male born in January 2008) ("Son").[1] We affirm.

We briefly summarize the facts and procedural history of this case as follows. Mother and Father were married in 1997. They filed for divorce in January 2016 and separated two months later. On August 8, 2016, the parties entered into a custody agreement, memorialized by consent order, whereby

---

[1] More specifically, the order granted the parties shared physical custody of the children on an alternating weekly basis. The trial court order further granted the parties shared legal custody of the children, except that Father was granted sole legal custody regarding the children's schooling and education and Father was given the sole right to have Daughter "examined by any physician, psychologist, or psychiatrist […] for a second opinion or for testing[.]" Order of Court, 5/28/2019, at 11-12.

Mother had primary physical custody of the children. Father had partial physical custody of the children every other week from after school on Thursday until Monday morning and one weekday afternoon each week. Moreover, under their custody agreement, Mother and Father shared legal custody.

Father subsequently filed a petition for custody seeking sole legal custody to make educational and medical decisions for the children. Father maintained that he wanted Daughter, who had been home-schooled by Mother since the fourth grade, to attend school full-time. At the time of the modification petition, Daughter was enrolled in several classes at the public high school and engaged in multiple extra-curricular activities, including ballet and dance classes, acting in musicals and plays, band, and singing.[2] Father also expressed concerned about Daughter's medical care, claiming he was skeptical about various ailments and diagnoses Daughter had received over the years. Daughter has been diagnosed, *inter alia*, with Tourette's syndrome, mononucleosis, bronchitis, pneumonia, strep throat, scarlet fever, Lyme disease, Pediatric Autoimmune Neuropsychiatric Disorder Associated with Strep (PANDAS), herpes, memory loss, brain fog, sensitivity to sound and touch, Obsessive-Compulsive Disorder (OCD), germ phobia, separation anxiety, sleep disorder, and depression.

---

[2] Daughter also ran cross-country and took gymnastic classes until soreness in her joints prevented her from participating in those activities.

Following a three-day hearing, on May 28, 2019, the trial court entered findings of fact and an order of court granting physical custody of the children on a 50-50 schedule. The trial court granted sole legal custody to Father for educational and medical decisions, but ordered the parties to share legal custody in all other respects. Moreover, the trial court made clear that Father was required to consult with Mother regarding educational and medical choices, with the ultimate decision reserved to Father alone. This timely appeal resulted.[3]

On appeal, Mother raises the following issues[4] for our review:

1. Did the trial court commit an abuse of discretion and/or error of law in issuing its [o]rder of [c]ourt [] filed on the docket on May [28,] 2019[?]

2. Did the trial court commit an abuse of discretion and/or error of law in awarding Father the sole legal right to determine where and how the children are educated and enrolled in school when it failed to conside[r] the recommendations and opinion of [Daughter's] treating physician and/or evidence regarding [Daughter's] health issues and need for accommodations?

_____

[3] Mother filed a timely notice of appeal and corresponding concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) on June 20, 2019. The trial court relied upon its earlier findings of fact entered on May 28, 2019 as the rationale for its decision.

[4] We have reordered the issues for ease of discussion. Additionally, Mother raised two additional issues in her concise statement challenging evidentiary rulings made by the trial court, but she abandons those claims on appeal. *See* Mother's Brief at 22 n.1. We find those issues waived. *Commonwealth v. Dunphy*, 20 A.3d 1215, 1218 (Pa. Super. 2011) (Issues raised in Pa.R.A.P. 1925 concise statement that are not developed in appellate brief are abandoned); *see also Commonwealth v. Woodward*, 129 A.3d 480, 509 (Pa. 2015) (holding that "where an appellate brief fails to … develop an issue in any [] meaningful fashion capable of review, that claim is waived.").

3. Did the trial court commit an abuse of discretion and/or error of law when it modified the physical custody schedule and awarded Father the sole legal right to determine where and how the children are educated and enrolled in school based on facts and conclusions not supported by evidence of record?

4. Did the trial court commit an abuse of discretion and/or error of law when it ordered that the parents should share physical custody when the evidence showed that Father works full time and is frequently unavailable on evenings and weekends, that Father does not have proper accommodations for the children, the children prefer to remain in Mother's primary custody, and Mother had provided a stable home life as the primary physical custodian for the children?

5. Did the trial court commit an abuse of discretion and/or error of law when it considered the testimony and recommendation of the Guardian [A]d [L]item [(GAL)], even though the GAL did not conduct a thorough and independent investigation, failed to speak with [Daughter's] primary physician and only interviewed witnesses whose names were provided by Father?

Mother's Brief at 22.

Mother's issues overlap and broadly challenge the trial court's decisions regarding custody. However, three primary categories emerge from Mother's complaints on appeal. Mother challenges the grant of sole legal custody to Father regarding the children's education and Daughter's medical care. She also challenges the trial court's grant of equal shared physical custody of the children. Finally, Mother contends that the GAL did not conduct a thorough and independent investigation before making her recommendations to the court.

Mother's chief complaints, however, relate to the legal custody determination with regard to Daughter. Mother argues that the trial court

failed to account for Daughter's "complicated and lengthy medical history." *Id.* at 26. She claims that over the years Daughter has been diagnosed with the aforementioned ailments. *Id.* at 26-31. In 2015, the parties agreed to have Daughter treated by Dr. Allen Lewis and later consulted him regarding a plan for part-time enrollment in public school. *Id.* at 27-28. In January 2016, Dr. Lewis opined that Daughter's public school schedule not be increased until her symptoms of Lyme disease and PANDAS dissipated. *Id.* at 28-29. Moreover, Mother argues that "in spite of [Father's] skepticism regarding Dr. Lewis's diagnosis and treatment, [Father] failed to offer any medical testimony or evidence to contradict the opinions of [Daughter's] long-term physician or to demonstrate that it is not accurate." *Id.* at 42.

Relatedly, Mother argues that it was error to grant Father sole legal custody regarding Daughter's education. Mother claims that although the parties disagreed over the number of public school classes in which to enroll Daughter, "both parties are fit parents who have been able to cooperate and compromise regarding difficult issues, [thus] there [was] no basis in the record for modification of legal custody." *Id.* at 33. Mother complains that in rendering its decision regarding legal custody, there was no evidentiary support for the trial court to opine that Daughter "would not be able to attend college or hold down a regular job" unless educational changes were made on her behalf. *Id.* at 39-40. Finally, by determining that if Daughter could participate in strenuous physical extra-curricular activities that required her to travel distances, she could attend public school full-time, Mother argues

that, "the court ignored testimony that [Daughter] frequently misses rehearsals and activities due to illness." *Id.* at 41. Accordingly, Mother argues that by "awarding [Father] sole legal custody for purposes of making educational decisions, the court failed to consider that [Father] intended to go against medical advice without providing any basis for doing so." *Id.* at 43.

Our standard of review in child custody cases is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*V.B. v. J.E.B.*, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

"When a trial court orders a form of custody, the best interest of the child is paramount." *S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014) (citation omitted). The factors that a trial court must consider when awarding custody are set forth at 23 Pa.C.S.A. § 5328(a):

> (a) Factors.--In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> > (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a). All relevant factors shall be considered by the trial court, and the only factors that should be given "weighted consideration" are factors that "affect the safety of the child[.]" ***M.J.M. v. M.L.G.***, 63 A.3d 331, 338 (Pa. Super. 2013) (citation omitted).

Upon careful review of the certified record, we discern no abuse of discretion or error of law in determining legal custody. Here, the trial court thoughtfully considered the sixteen factors regarding custody as set forth in Section 5328. The trial court measured Daughter's extensive medical history and her entire educational experience in determining that Father was the party best suited to meet her best interests in these regards. The evidence presented at the custody hearing showed that Daughter is a capable, often described as gifted, student who would benefit from additional formal education in a public school setting. Daughter's current public school educators testified consistently that Daughter does not display the physical manifestations of her illnesses at school, she thrives academically, and there are appropriate individual educational plans in effect that specially address Daughter's needs while in school. N.T., 4/22/2019, at 31-33, 198-200, and 217. Moreover, while Father did not offer additional medical testimony to refute Daughter's current diagnoses, he sought legal custody to seek another

medical opinion because: (1) the unrefuted evidence presented showed Daughter's long-term treatment has not been entirely successful and she still reported symptoms, and (2) Father could not unilaterally obtain a second medical opinion, while still sharing legal custody equally with Mother, without Mother's express consent. Daughter has not been presenting physical symptoms at school. However, her treating physician recommended that Daughter's partial school schedule remain the same because of her ailments and Mother unyieldingly opines that Daughter's current medical care and education is proper. Thus, we conclude that, based upon the record before us, it was appropriate for the trial court to award Father sole legal custody to obtain a second medical opinion and make continued medical decisions on behalf of Daughter. Furthermore, Daughter testified that she would like to attend college. *Id.* at 133. A guidance counselor testified that Daughter's preparation for college and chance for admission would increase with additional public schooling, especially in specialized areas of study. *Id.* at 249. The record supports the trial court's determination that Father is suited to provide for the children's educational best interests.

Next, Mother asserts that the trial court erred in granting Father shared physical custody of both children. Mother's Brief, at 33-39. Mother challenges the trial court's application of several of the sixteen required factors for custody modification pursuant to 23 Pa.C.S.A. § 5328. *Id.* Mother claims that Father's work schedule is demanding and "he offered no evidence to show how he would accommodate the children's after school and evening

obligations[,]" what arrangements he would make while working, and/or if he could "provide care for [Daughter] should she fall ill during his custody time or how he would monitor her medical needs." *Id.* at 36. Mother further argues that the trial court failed to consider Father's lack of suitable housing for custodial visitation as Father lives in a two-bedroom apartment and sleeps in the living room when the children visit. *Id.* at 37. Mother claims that the children prefer to remain in Mother's primary custody and that "the court's finding that [Son] told the GAL that he preferred to live primarily with [Father] is not supported by either the record or the GAL's report." *Id.* at 38. As such, Mother argues that the trial court "provided no analysis of how a change to the current schedule would be of a benefit to the children." *Id.*

The record supports the trial court's determination that shared physical custody was appropriate. The trial court specifically considered Father's employment schedule and housing and determined that shared physical custody met the children's needs. The record evidence shows that the children were often tardy and frequently missed school while in Mother's care. Whereas, there was no evidence that Father's employment schedule interfered with his ability to meet the children's ongoing needs. Regarding housing, Son testified that the bedroom at Father's apartment is specifically for him. Son "chose the covers and the curtains and all of the things that are in it." N.T., 4/22/2019, at 175. Father sleeps in that room when Son is not visiting and sleeps on a sofa bed in the living room during custodial periods. *Id.* Father

has provided each of the children with a private, individually tailored separate space to stay during his periods of custody.

We also reject Mother's contention that there was no evidence that Son told the GAL that he preferred to live with Father. In fact, when asked directly, Son testified that he thought he did tell the GAL he would like to live with Father, but just could not remember. *Id*. at 154-155 ("I think. If [the GAL] wrote that down, I think I did, I just don't remember."). Moreover, the GAL specified that, in making her recommendations to the trial court, she considered the children's preferences, but they expressed their preferences in confidence and she would not betray that trust. N.T., 5/2/2019, at 30. Accordingly, for all of the foregoing reasons, we conclude that the record supports the trial court's determination that the parties share physical custody of the children.

In her final related issue, Mother claims that the GAL did not conduct a thorough or independent investigation, failed to speak with Daughter's primary physician, and only interviewed witnesses provided by Father. Mother's Brief at 44-46. The GAL stated that, as is her usual practice, she did not speak directly with doctors in rendering her recommendations and, instead, relied upon their depositions during her investigation. N.T., 5/2/2019, at 15-16. The GAL testified that the various community members she spoke with had sought her out and she did not contact them. *Id.* at 29. The GAL further testified that she "would have been glad to talk to anybody" had Mother provided the names of potential witnesses. *Id.* The record

supports the GAL's conclusions. Mother does not contend that she provided the GAL with witness names and the GAL failed to interview them. In fact, on appeal, Mother does not offer any specific additional witnesses that were necessary to the GAL's determination and, instead, makes only a bald allegation that her investigation was not thorough. We conclude that Mother is not entitled to relief on her final claim.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/12/2019